The Court took time for advisement, and now, at this term, their opinion was delivered as follows, by
Sewall, J.
The plaintiff complains that his cattle have been unlawfully taken by the defendants; and against this supposed trespass they defend as assessors of the north parish [ * 280 ] * in Harwich; and they allege that the plaintiff was an inhabitant of the said parish, liable to be assessed therein in all parish charges and assessments, and was there duly assessed his just proportion of a certain parish tax ; and they justify a distress of the cattle mentioned, by their warrant to enforce the payment of the said assessment.
, The authority of the defendants is questioned by the plaintiff upon two grounds; the existence, in January, 1804, when this assessment was made, of a north parish in Harwich, is denied ; and the plaintiff claims an exemption from the authority of the assessors of that parish, by a legal or constructive removal from it if it then existed.
Originally, ministers were to be provided, supported, and maintained, by the inhabitants of each town (1) ; and among the town charges, for which each particular person was made liable, was a charge for such sum or sums as shall be ordered by the inhabitants, in any town meeting, for the maintenance and support of the min istry (2). A statute of the next year recognizes, however, a dis tributive method in collecting and applying the money raised for the support of the ministry in towns or places where more than one *247 association for public worship had been formed. In a statute (3) explanatory of the former, touching the settlement and support of ministers, power is given to each respective gathered church in any town or place to choose their own minister, which choice was to be concurred in by the inhabitants there usually attending public worship; and the person thus chosen, if he accepted, became, upon settling, the minister, towards whose settlement and maintenance all the inhabitants and ratable estates within such town, or part of a town, or place limited by law for upholding the public worship of God, were obliged to pay in proportion. It must be understood from this provision that there existed then, viz. in 1693, a division of towns for ministerial or parochial purposes, occurring in some instances by the voluntary association or gathering of church members and inhabitants usually attending at the same place of public worship. Institutions of this *kind may be con- [ * 281 ] sidered as included by the subsequent legislative provisions for the inhabitants of eacli district or precinct regularly set off from any town, empowering them to appoint clerks, assessors (4) and collectors (5) ; to raise money for building and repairing thei meeting-houses (6) ; granting to the committees chosen in parishes, precincts and districts to manage their prudentials, the like powers for calling meetings of their several parishes, &c., as the selectmen of towns have to call and appoint town meetings (7) ; and regula ting the meetings of districts, precincts and parishes (8) ; and providing for the assessment and collection of precinct, district and parish rates, in connection with other public taxes (9) ; and lastly, by the statute (10) enacted since the revolution, to regulate parishes and precincts, and the officers thereof, which confirms and establishes the bounds and limits of precincts and parishes as formerly settled, until they shall be otherwise ordered by the General Court.
That a part of an incorporated town constitutes a parish, with distinct powers for the voting, assessing and collecting of certain taxes, is a fact provable therefore, in some instances, by other evidence than an act of the General Court. And the evidence admitted in this case might be, and, not being contradicted, must be considered as satisfactory proof of a division in the town of Harwich, which had been long subsisting, known as the North Paiish of Harwich, possessing and exercising, under the acts which have been cited, corporate powers for the maintenance of public worship in that district of the town. The particulars proved respecting the *248 plaintiff, that he had been an assessor and officer in this district, hac attended public worship with 'his family, and paid his taxes there for a course of years, and until 1804, were circumstances, fron which his connection with the North Parish, as a member of n, might be satisfactorily deduced. If better evidence of the existence of the North Parish, and of the plaintiff’s relation to it, [ * 282 ] were not to be had, the * proof relied on by the defendants was legal and sufficient. But it is not necessary to decide conclusively on this part of the case, because, in the event of a new trial, the plaintiff may have the benefit of this objection (11).
The merits of the defence in this action may be understood at this time to depend upon the inquiry whether, before the assessment enforced by the distress complained of as a trespass, the North Parish in Harwich had been legally abolished; and if this had not happened, whether the plaintiff was exempted from the payment of taxes in the North Parish; and in this inquiry we are to be governed by the statute of 1802, c. 76, to divide the town of Harwich, and to incorporate the northerly part thereof into a separate town by the name of Brewster. The division established by this act, is a separation of the northerly part by certain boundaries from the residue of the town, for the incorporation of another town. Whether the boundaries of the new incorporation coincided with the boundaries of the ancient northerly parish, does not appear; and the circumstance is not material. The inhabitants of the town, those incorporated in that capacity, are not necessarily, and of course, members of the parish. Quakers, for instance, and others exempted in conformity to their religious scruples and opinions, though members of a town, are not members of a parish comprehended by the same boundaries. When the inhabitants of a parish or district, previously incorporated for the support of public worship, are incorporated as a town, the reference to the prior incorporation may be understood as descriptive of the territory whose residents become a town, and not to the individuals composing the former incor poration. Where therefore the boundaries of territory are the same, the town is not of course, and by any necessary construction, the successor of the parish: the distinct incorporations may, and for many purposes in the exercise of their several-powers and authorities, must subsist together, and act apart under the management of different officers. When it happens that the boundaries of the town and parish are not the same, which is said to be the case in this instance, there is an additional incompatibility of the two incorporations, *249 which seems further to require * the continuance of [ * 283 ] each for the preservation of their distinct property and privileges, and to answer the several purposes of their creation.
If the supposed abolition does not exist, by any construction, from the nature of the case, is it to be understood from the words of the statute ? The clauses chiefly relied on for the plaintiff are the exceptions from the newly-incorporated town, of certain individuals, who are described as “ those who live in the north parish,” and the fourth section of the statute, which is in these words, “ that town lands and ministerial property owned by said town shall be equally divided between the two towns.” The argument from the first-cited words is anticipated in what has been said upon a supposed case of a district or parish incorporated as a town. The incidental reference to the north parish, in describing certain persons exempted from the incorporation of the town of Brewster, is not more conclusive against the parish, than an- incorporation by the boundaries of the parish, or by a general reference to the north parish, would have been; and yet in that case it is not a necessary construction that the town succeeds to the parish, in all its privileges, property and duties. Besides, the words under consideration plainly regard territory, and not individuals; for instance, a Quaker, who had been a i smonstrant, though not a member of the parish, is, by these words, excepted from the incorporation of the town.
The fourth section of the statute seems, at the first view, to dis cover an apprehension of the legislature, that the two parishes of Harwich would, by their act, become distinct towns, and were therefore, in that capacity, to retain their ministerial property. But, upon -consideration, it will appear that the property of this kind to be divided between the two towns, was not a property which had before vested in either parish, or in the minister thereof for the time being. The statute respects the ministerial property owned by the town of Harwich before the division. These words affect property, in which, from the nature of it, the town, as such, were only the trustees, having the legal interest or fee, while the beneficial interest and property was in the two parishes; or *pro- [ * 284 J perty at the disposal of the town, conformable to the especial appropriation. This property is by the statute divided equally between the two towns; but after this division it must re main subject to the original appropriation and trust.
And upon the whole, from these clauses of the statute, or from any other words of it, according to my apprehension of them, there does not result any necessary or probable implication, that by the creation of the town of Brewster, the north parish of Harwich, aa *250 an incorporation to support public worship, is abolished or suspended.
This construction of the statute applies also to the supposed personal exemption from taxes in the north parish, which has been argued for the plaintiff. If the incorporation is confined to the creation of the town of Brewster, without affecting the privileges, or duties, or powers of the north parish, the exception, under which the plaintiff claims his exemption, is not to be extended further than the principal subject from which it is taken, and must be confined to an exemption from the town charges and to the continuance of the party as a town member or citizen with the old town of Harwich, leaving his duties, engagements and liability as a parishioner, in its former state.
This construction of the exception renders it unnecessary to inquire, whether it could be the intention of the legislature, that fur the term of two years there should exist a great degree of uncertainty respecting the members of the two towns of Harwich and Brewster, insomuch that in no part of that period it should be possible to determine respecting certain individuals, whether they were taxable in one corporation or the other. This inconvenience is unavoidable, if a remonstrant might at any time, and with a retroac-» live effect, by leaving his name in the secretary’s office, remove himself and his estate from Brewster to Harwich. And yet this inconvenient construction is necessary, in whatever light this case may be considered 'in other respects, to maintain this action. The tax complained of was assessed in January, 1804, and on the 5th of May, 1804, the plaintiff signified his determination to remove from Brewster; whether this operated to remove him [ * 285 ] from the town or parish, * or both, unless the notice required by the statute had a retroactive effect, he was liable to a tax previously voted and assessed.
The third section of the statute provides against this uncertainty, as it respects the apportionment of state taxes, which are to be divided equally between the two towns, during the two years in which removals may take place ; but this provision has no effect upon the uncertainty which must exist in the assessment of a state, or any other tax, among the individuals in each town.
And perhaps the more reasonable construction of the statute, in this respect, is, that the removal or exception takes place from the time of notice, though two years are allowed to individuals for fixing their determination. And upon this construction the plaintiff has no colorable foundation whatever for his action, from the statute to incorporate the town of Brewster.
*251 The verdict, therefore, being against the direction of the Court in a matter of law, which appears, upon the fullest examination, to have been entirely correct, must be set aside; and the action is open for a new trial.
The Chief Justice observed that, as he had been of counsel for the inhabitants of Brewster, to obtain their incorporation, he should have given no opinion, if his brethren had disagreed.

A new trial granted.

 Stat. 4 Will. & Mar. c. 10.

 Ibid. c. 12.

 Stat. 4 Will, Mar. c. 20.

 Stat. 1 Ann. c. 3.

 Stat. 9 Ann. c 5

 3 & G. 1 c. 8.

 7 G. 1, c. 8.

 10 G. 1, c. 3.

 4 G 2, c. 1.

 1786, c. 10.

 [Dillingham vs. Snow, 5 Mass. 547.—Stockbridge vs. Stockbridge, 12 Mass 400.—Ed.]