Parker, C. J.
The demandant sues for possession of a lot of land, of which he declares himself to be seised in fee, in right of the first parish in the town of Lebanon, averring that he is the settled, ordained minister of that parish.
By the facts agreed by the parties, it appears that no parish has been incorporated within the town of Lebanon, either by territorial limits or otherwise ; and therefore it is contended by the tenant that there is no first parish, and so no such title can have accrued to the demandant as he has set forth. And it is perhaps true that, unless there are two parishes within the town of some kind, there cannot be a first parish within the meaning of the statute of 1786, c. 10, § 4, which provides that, when one or more parishes or precincts shall be set off from a town, the remaining part of such town shall be the principal or first parish.
We say,perhaps this is true; for we are not satisfied that, within the equity of that provision, the same consequences will not attach when, under the “Act respecting Public Worship and Religious Freedom,” a large number of the inhabitants of any town, which has not been divided into parishes, shall secede from the parochial concerns of the town, in the manner provided by that act, without being incorporated as a parish. But it not being necessary to decide this question in the present case, we forbear to give any opinion upon it, until a proper occasion shall arise, (a)
* Every town within this commonwealth, which acts as a town in the settlement and maintenance of a minister, and in erecting and keeping in repair a house for public worship, may lawfully be considered a parish as well as a town, to all essential purposes, (b) the duties incumbent upon parishes being required of them by the laws, and all parochial property being held by them in their corporate capacity. It is competent, we apprehend, for the inhabitants of towns thus situated to proceed parochially, in all matters touching the support of public worship, and the settlement and maintenance of ministers; and it is believed that some towns, in early times, before any division had taken place by the incorporation of any parish within their limits, conducted their parochial business at distinct meetings from those of the towns, and had parish officers in the same manner as if they had been distinct corporations. And this would seem often to be necessary, whenever there were Quakers, or others exempt from parish duty, within the town. For otherwise these might, by their votes, influence the *416 proceedings, and prevent the proper administration of parochial concerns.
By the provincial act of 1758, (4) it was provided that, where one half, or more, of the assessors or collectors of a town should be Quakers, such of the inhabitants as were not Quakers might proceed to the choice of an equal number of other persons not Quakers; who, with those of the first election who were not Quakers, should be qualified to assess and collect taxes for the settlement and support of the ministry, and for building and repairing houses for public worship within such town.
A minister of a town might, therefore, well call himself the minister of the parish, in a suit wherein he claims possession of property jure parochice; for it is as a parish that the town is entitled ; and he is, in truth, settled over a parish, as well as a town — all the inhabitants of the town being members of the parish, unless they have disconnected themselves therefrom in some legal way. There seems, *then, to be no objection to the action, on the ground that the demandant claims in right of a parish ; and the denominating it the first parish is immaterial, because it is at most a misnomer, which can be taken advantage of only in abatement.
But it is further objected that the demandant was never lawfully settled over the parish or town of Lebanon ; because the warnings, under which the meetings were held, at which the parish was organized, and the vote was passed to settle him, was of the Congregational parish in Lebanon; and it is said that, in consequence of this warning, none but Congregationalists were authorized to attend and vote.
If, however, the town was a parish, it was a Congregational parish, for the former minister, Mr. Hasey, was expressly settled as a Congregational minister, and continued such until his death in 1812. Nor is there evidence of any act, tending to show a' change in. the corporation in this respect. It is stated that a majority of the inhabitants were, at the time of the demandant’s settlement, of the denomination of Baptists, or of some other persuasion different from the Congregational. This may be true, and still the parish be Congregational. If the majority had been incorporated, this would iiave left the minority a parish of the Congregational order, with all the privileges of the first parish; and a secession of the majority, without an incorporation, would be attended with the same consequence, as to every thing but the name. At the meeting which was warned, all the qualified voters within the town, except such as *417 had availed themselves of the liberty secured to them by the act of 1811, had a right to vote, whether Congregationalists or not; for many persons may belong to a Congregational parish, who are not themselves of that order ; they being subject to taxation for the support of public worship, unless they have taken the measures to become exempt which aré prescribed in the said act. There is no evidence of the exclusion of any such persons from voting; and if they declined attending, from a supposition that they had no right * under the warning, their ignorance or mistake of their rights cannot defeat the measures of the parish, which were regularly adopted.
It is in this view that we consider the resolve of the legislature, which passed February 16, 1814, authorizing B. Green, Esq., to call a meeting of the Congregational parish, as valid. And there can be no doubt of the wisdom of that measure. For it appears that, at a town meeting called before, for the express purpose of determining whether a successor to Mr. Hasey should be settled or not, it was voted not to settle a minister; and at this meeting nearly one half of the voters had filed certificates, the effect of which was to exonerate them from all parochial burdens. Thus the town, or parish, were made liable to a penalty for not having a settled minister, and yet were prevented from doing their duty by the interference of those who had no right to interfere in the parochial affairs of the town; and who probably, by virtue of the statute of 1811, would not be liable to any part of the penalty which might be exacted for the non-performance of this duty. The legislature, seeing this state of things, wisely directed a meeting of the Congregational parish to be called ; intending, no doubt, to exclude those from voting, who had voluntarily withdrawn from the parish, and refused to bear any of its burdens, but leaving the privilege of voting to all, of whatever persuasion, who had not surrendered it by their own act. We consider the parish to have been established and organized by the meetings had under that authority; and as the demandant was regularly settled as the minister, he has a right to recover the land which belongs to the parish.

Tenant defaulted.

а) Minot vs. Curtis & Al. 7 Mass. Rep. 441. — Brunswick vs. Dunning & Al. 7 Mass. Rep. 445. — Sutton vs. Cole & Al. 8 Mass. Rep. 96.

 Cochran vs. Camden, ante, 296. — Dillingham vs. Snow, 5 Mass. Rep. 5, 547. — 3 Mass. Rep. 276. — Medford vs. Pratt, 4 Pick. 222.

 Ancient Charters, &c. 785