Sewall, J.
In the argument upon the exceptions filed for the tenant in this action, the title of the demandant has been placed upon the ground of a demand of a tract of land appropriated to pious uses; and, whatever uncertainty there might have been in a title of this description, as to the person or corporation entitled, the manner of vesting, and the course of inheritance or succession of the estate, all doubts of this kind were removed by the solicitude of our ancestors upon subjects of this nature. [ *97 ] *In 1754, by a statute, (1) revised and reenacted in most of its provisions since the revolution, (2) it was declared and established that the minister or ministers of the several Protestant churches, of whatever denomination, are and shall be deemed capable of taking in succession any parsonage land or lands granted to the minister and his successors, or to the use of the ministers, and of suing or defending all actions touching the same. In the several cases which have occurred, where the construction and application of this ancient statute, as it may be called, have been brought in question, the decisions of the superior court, and of this Court, have finally settled the following rules or principles, according to the traditions and reports which we have upon the subject.
A donation of lands to the use of the ministry has the same import, and is as much within the purview of the statute, as a donation of parsonage lands to the use of the minister or ministers, — the case provided for by the terms of the statute. (3) Both intend the ministers in their official capacity, designating them in the one case by the name of the officer, and in the other by the name of his office. Lands and tenements, thus given and appropriated to pious uses, are holden by the minister of the parish or corporation, for whose particular benefit the gift or appropriation is made, as an estate in fee simple in him and his successors; the first appointed minister and his successors taking the same, upon a regular settlement and ordination, as a sole corporation ; and until the appointment, and during vacancies in the ministry, the estate being in abeyance, but in the custody, and therefore in the possession and under the care, of the parish or aggregate corporation. And, independently of the interposition of the legislature for the purpose, the estate in lands appropriated to the benefit of a parish or religious society, by whatever description incorporated, remains with the residue of the original parish or society, and is not in [ * 98 ] any manner transferred or distributed * by a separation, *109 or change among the members, or in the territorial limits of the corporation. (4)
Applying these rules and decisions to the case at bar, unless it is distinguishable upon 'the grounds suggested by the counsel for the tenant, it seems to result undeniably upon the question of title, that the right or share in the township of North Yarmouth, according to the original extent of that territory or grant, vested in the first minister, (if the statute, considered as declaratory and to remove doubts, had any retrospective operation,) or at least in Mr. Loring, or whoever was their minister in 1754, as an estate to him and his successors ; and all the consequences of this statute title, as it may be called, then, if not before, took effect upon the lots of land drawn to the appropriated right or share ; one of which was the lot now in question. From that time, therefore, whatever might have been the effect of a previous disposition, if any had happened, this tract of land became unalienable by the town, and the estate of their ministers, to be holden by them in succession. And this succession is with the ministers of the first parish, as it is now called ; which, to this purpose, is the religious society or corporation to whose use and benefit the appropriation was made, being what remains of that aggregate corporation, after the separation and changes of limits which have taken place under the sanction of the legislature.
But the tenant makes it a question, whether the appropriation, in the case at bar, was a donation of the kind contemplated and provided for by the statute. It is argued against the supposed title of the demandant, that the right or share appropriated to the use of the ministry, and the lots drawn upon that right, were never out of the town, as an estate or property transferred from them; that occasionally, and so far only as the votes of the town appropriated them, in their contracts with their ministers at their settlement, those individuals had the use and occupation; that this is further proved by the disposition made of one of the lots to the easterly district, and by the other aid afforded * them in building their meeting-house; and that the [ * 99 ] demandant, at his settlement, consented to the same construction, then adopted and acted upon by his parish in the terms made with him, contradictory to the construction of the supposed grant or donation now contended for by him. And it must be allowed that the conduct of the town of North Yarmouth, in the instances stated and referred to, gives a strong coloring to this argument, and to the suggestions upon which it proceeds.
*110 Titles in real estate are not lost, however, by mistaken apprehensions of legal rights or duties. The proprietors of North Yarmouth, who made the appropriation in question, and the inhabitants there, then or afterwards incorporated as a town, for whose benefit the appropriation was made, are to be regarded as different bodies or collections of men, even if at any time constituted by the same individuals, because proceeding and acting with different purposes, and in different capacities. The proprietors appropriated, and the town accepted, the appropriation, as appears by their votes, in the time of Mr. Cutter, their "first minister; and the statute of 1754 established the title of the minister, and controlled the assumed authority of the town.
Besides, it may be observed, that a relinquishment or alienation, made by the minister for the time being, is valid against himself; and, although no alienation by the town is valid against the minister, if made without his concurrence and consent, this mutual restriction is no obstacle to any temporary arrangement, in which the minister and people concur; as in a reservation of ministerial lands, to be continued in the occupation of the parish, by a stipulation with the minister at his settlement. Nor is it pretended, in the case at bar, that the tenant holds or claims the lot demanded under any license or title derived from the first parish, or from the demandant, or any of his predecessors in the ministry.
And upon the whole, in what depends on the title of the demandant to the lands and premises described in the [ * 100 ] writ, * the Court have no hesitation in considering the action maintained by the evidence; and that the lot of land demanded is recoverable by him in the right of the first parish of North Yarmouth; but whether in this action upon his own seisin, under all the circumstances of this case, is a question of some difficulty ; in considering which, however, we are disposed to give a liberal effect to the evidence, and to presume rather in favor of the action than against it, where a formal objection is relied on; and, if it prevails, the demandant is to be turned round to another action, to avoid a mere right of possession. The limitations upon real actions, and the saluatary provisions of law in that respect, are not, however, to be neglected.
The demandant declares upon his own seisin, and it is incumbent upon him to maintain this averment of his writ, to enable him to recover the premises demanded in this action.
In April, 1810, the demandant entered upon the lot in question : and if his entry was then lawful, his seisin is sufficiently proved. In what depends upon the title, this question has been settled in his *111 favor; but the title is not sufficient, as a right of entry, if the seisin and possession under it had been interrupted by an actual disseisin and ouster for a term of twenty years.
We cannot consider the agreement between Mr. Gilman and his parish as in any respect an ouster or dispossession. The lands reserved by that agreement were holden under him. The agree ment itself was a recognition of his title, and it could have no operation to prejudice the rights of his successor. Besides, it may bo called a lawful disposition, in which the minister and the parish mutually consented. And until the incorporation of Freeport, in 1789, there seems to be no pretence of any possession adverse to the title of the ministers of the first parish of North Yarmouth. At some period after that incorporation, an adverse possession commenced, which was continued by the tenant when the demandant entered upon him in April, 1810.
* If the vote of the town of Freeport respecting minis- [*101 ] terial lands, or what is said by the possession taken by Mr. Johnson in the autumn of 1789, were evidence of a disseisin then committed, the entry of the demandant was not lawful, being after an adverse possession of more than twenty years; and perhaps this is a question which the jury was more competent to have settled than the Court. But as the time is distinguished by the evidence, when Mr. Johnson’s possession commenced, as an actual and permanent occupation, which was not until about two years after September, 1789, and as nothing is said of any visible and notorious occupation under the vote of the town, or by Mr. Johnson, previous to his improve ment by fencing, we think the jury were correctly instructed in this particular also; and that the verdict for the demandant may be confirmed.
The exceptions are accordingly overruled, and judgment is to be entered on the verdict, (a)

 See Mass. Stat. vol. ii. 1037. Appendix.

 Stat. 1785, c. 51.

 2 Mass. Rep. 500, Weston vs. Hunt

7"> 7 Mass. Rep. 445, Brunswick vs. Dunning.

 [Vide Inhab. Harrison vs. Bridgeton, 16 Mass. Rep. 16. — Jewett vs. Burrough, 15 Mass. Rep. 464. — Austin vs. Thomas, 14 Mass. Rep. 333. — Inhab. First Par. Shapleigh vs. Gilman, 13 Mass. Rep. 190. — Dillingham vs. Snow, 3 Mass. Rep. 276.—5 Mass. Rep. 547. — First Parish Medford vs. Pratt, 4 Pick. 222. — First Parish Brunswick vs. Dunning, 7 Mass. Rep. 445. — Baker vs. Fales, 16 Mass. Rep. 488. — Eages vs Marlborough, post, 430. — Milford vs. Godfrey, 1 Pick. 91. — Ed.]