## SUPREME JUDICIAL COURT

FOR THE COUNTY OF

# KENNEBEC.

## MAY TERM

## 1821.

---

### THE INHABITANTS OF THE FIRST PARISH IN WINTHROP
*v.*
### THE INHABITANTS OF THE TOWN OF WINTHROP.

Where lands, which had been originally granted to a town for the use of the ministry, were sold by virtue of a resolve of the legislature, and the money put at interest by the town, the annual income to be applied to the use of the ministry; and afterwards, a number of the inhabitants being incorporated into a separate religious society, the residue became a distinct parish; it was holden that this residue, thus forming a distinct parish, succeeded to all the parochial rights and duties of the town, and were entitled to recover of the town the money and interest arising from the sales of such land.

*ASSUMPSIT* for money had and received. In support of the action the plaintiffs read a deed from the *Proprietors of the Kennebec purchase*, dated *July* 9, 1777, by which they granted a certain lot of land in *Winthrop* to the town of *Winthrop*, for the use of the ministry in said town forever. They also read the statute of *Massachusetts* 1790, *cap.* 46, incorporating a part of *Winthrop* into a new town by the name of *Readfield*, and enacting that the new town should receive its proportionable part of all public lands, and of all other public property whatever, which belonged to the town of *Winthrop* at the time of their separation;—and a Resolve of the Legislature of *Massachusetts* passed *March* 1, 1799, on the petition of the towns of *Winthrop* and *Readfield*, authorizing the treasurers of those towns jointly to sell and execute a conveyance of lot No. 57, it being the

Winthrop v. Winthrop.

joint property of said towns; and the said towns were, by said Resolve, " further authorized and required to loan their re- " spective proportions of the monies arising from such sale, and " apply the interest thereof to the use of the ministry in the " same."

They also proved that in the course of the same year 1799, the treasurers of the two towns sold said lot agreeably to said Resolve, and received promissory notes for the consideration, amounting to about fifteen hundred dollars; about eight hund- red of which were payable to the treasurer of the town of *Win- throp*;—and that said notes have been kept by the successive treasurers of *Winthrop*, separate and distinct from the other property of said town, and constantly on interest; the notes being renewed yearly, and still due for the whole amount of the sale. And they read to the jury a statute of *Massachusetts* 1810, *cap.* 99, incorporating certain inhabitants of *Winthrop* into a separate religious society, or poll-parish.

It was admitted that the plaintiffs, before the commencement of the action, had demanded of the treasurer of *Winthrop* the eight hundred dollars and interest;—and that when the Resolve of 1799 was passed, and afterwards, until long after the sale and conveyance of said lot, there was no settled minister in *Winthrop*;—but that about thirty-five years ago, and after the grant of 1777, a minister was regularly ordained and settled in that town, where he continued to officiate several years.

The defendants proved that *Mr. Thurston*, the present con- gregational minister in *Winthrop*, was settled in the month of *February* 1807, in pursuance of a previous invitation given by the inhabitants of the town, who voted him a fixed annual salary, so long as he should continue their minister, and a certain ad- ditional sum as a gratuity on his settlement; and that this sala- ry and settlement had been regularly voted by the town, up to the time of the incorporation of the poll-parish in the year 1811,—had been assessed upon the inhabitants, except those of the denominations of *Friends*, and *Baptists*, and duly paid to the *Rev. Mr. Thurston*, amounting to two thousand dollars.

It also appeared that *Mr. Thurston* had demanded of the agent of *Winthrop* the interest accruing from said fund, from

the time of his ordination, to the time of the demand, in *November* 1817.

The defendants offered to prove that the *town* of *Winthrop* had paid the salary of *Mr. Thurston* for two years after the incorporation of the poll-parish in the year 1811 ; but the evidence of this fact was not admitted by the Judge who presided at the trial ; and a verdict was taken by consent, for the plaintiffs for the amount of the fund and interest, subject to the opinion of the Court upon the effect of the evidence before stated.

The cause was argued at the last term by *Orr* and *A. Belcher* for the plaintiffs, and *Allen* for the defendants, and was thence continued to this term for advisement.

  *Argument for the plaintiffs.*

By the grant of *July* 1777 from the proprietors of the *Kennebec* purchase to the town of *Winthrop* of a parcel of land for the use of the ministry, the inhabitants became seized as trustees, to the use of whatever person should become a settled minister of the town.

While the title was thus in the inhabitants of *Winthrop*, that town, with the consent of the inhabitants, was divided, and a part of it erected into a new town by the name of *Readfield*, with a right to an equal proportion of the public property. This " public property" mentioned in the act, can be no other than that which belonged to the corporation, and in which all its members were interested ; and of course it includes the lands in question.

This construction is strengthened by the language of the resolve of 1799, which treats this land as public property. It is a legislative construction, and shews the understanding of the parties.

The question then arises, whether the trust thus placed in the hands of the inhabitants of *Winthrop* has been faithfully executed.

It should be observed that the object of this grant was to create a permanent and productive fund for the support of the regular ministry of the gospel. And the intent of the donors is fulfilled with equal exactness by a conversion of the land into money, the use remaining still the same. The legislature

Winthrop *v* Winthrop.

itself has given its sanction to this course of proceeding, having always adopted it where lands were unproductive and insufficient for the purpose intended ; and having expressly directed it in the present case, by the resolve of *March* 1, 1799, by which the treasurers of the two towns were authorized to sell the lands, and apply the interest of the money to the use of the ministry. The original intent of the donors has thus been steadily kept in view, and the deeds executed by the treasurers passed the estate to the grantees, they being the agents, and their acts having been ratified by the continued acquiescence of all parties concerned. Being public agents, the deeds very properly shew the public character in which they acted, without particularly naming their constituents.

The estate being thus regularly alienated, and a part of the inhabitants having separated themselves, as to parochial affairs, under the statute of 1810, the residue of the inhabitants became by the operation of law a distinct parish ; and succeeding to the parochial duties and privileges formerly belonging to the town, became trustees of the fund raised by the sale of the parish-land, and thus are entitled to maintain the present action.

It will not be contended that the minister could have alienated the land before it was sold. Neither can he possess the principal sum accruing from the sale ; for the possessor of money may always alienate it. No action would lie to compel him to pay over the money, if he should recover it by judgment of law ; and thus the fund would be abolished, and the intent of the donors be entirely frustrated.

That the remedy is not misconceived, the counsel referred to *Floyd v. Day*, 3 *Mass.* 403. *Young v. Adams*, 6 *Mass.* 182.

*Argument for the defendants.*

The first question is, in whom was the fee simple of the land granted by the Proprietors of the *Kennebec* purchase ? The words of the grant are, " to the town of *Winthrop* to the use of the ministry in said town forever." By the operation of *Stat.* 27. *Hen.* 8. adopted here as part of our common law, the legal estate would vest in the person in whom the use was declared to be, viz. the minister. The provincial *Stat.* 28. *Geo.* 2. *cap.* 9. has also more particularly declared in whom the estate shall vest. The judicial construction of this statute has been, that

Winthrop *v.* Winthrop.

every grant of land to the use of the ministry, whoever may be named as the grantee in the deed of conveyance, shall enure to the benefit of the ministry ;—that if there be no incumbent, the fee is in abeyance until a person comes *in esse* capable to take ;—that the first settled minister shall become seized of it in virtue of his office ;—that he holds it to him and his successors ;—and that he cannot alienate it, except during his life, without the consent of the town. The statute has expressly prohibited such alienation. No such prohibition on the town has ever been attempted to be enacted by the legislature, because, the fee not being in the town, a conveyance by the town would be merely void. *Weston v. Hunt*, 2 *Mass.* 500. *Brown v. Porter*, 10 *Mass.* 93. *Brown v. Nye*, 12 *Mass.* 285. *Dunning v. Brunswick*, 7 *Mass.* 445. *Austin v. Thomas*, 14 *Mass.* 333. In this last case it is said that the estate vested in the minister and his successors, although the grantee was the treasurer of the town. Any attempt therefore on the part of the town to alienate this land must be ineffectual ; and the present or any future minister, notwithstanding the deed in this case, may enter upon the land, and if resisted, may maintain a writ of entry. There is no reason, therefore, that the plaintiffs should receive the proceeds of this void sale, the whole of which must be refunded in an action of covenant, as soon as the grantees of the town have discovered that they have no legal title.

But it is said that the resolve of the legislature has given validity to this conveyance. No act, however, of the legislature can authorize one man or body of men to convey the estate of another without his consent. This estate is private property ; and no act of the legislature can alienate it, without the consent of the party in whom the estate is vested. *Constitution of Massachusetts, Bill of Rights, Art.* 10. *Dartmouth College v. Woodward*, 4 *Wheat.* 518.

If there were any efficacy in the resolve, and it was intended to refer to this land, yet it is wholly inoperative, as it describes a lot of land the *joint* property of *Winthrop* and *Readfield*. But the latter town had no interest in it, even if the former had. The claim of *Readfield* is founded in its act of incorporation, which gives that town a certain portion of the *public property ;* but as this land is private property, the claim cannot be supported. *Dartmouth College v. Woodward*, 4 *Wheat.* 518.

But admitting the sale under the resolve to be valid, yet the defendants, under the same resolve, would be bound to pay over the annual interest only. They were authorized to invest the proceeds in any funds which would afford that interest. Had they purchased an annuity, or invested the money in public stocks, would not this have been a faithful execution of their trust? Yet they ought not to be held to refund the principal money, from which this interest is to arise.

But this fund, being applicable to the minister, he alone can maintain an action for the money, supposing the estate to have passed by the deed of the treasurer. He has never relinquished his right; his demand in 1817 shews the contrary. Nothing in the terms of his settlement shews any such intention; and if there were, and the equitable interest thus passed to the plaintiffs, yet it being only an assignment in equity, the action at law must still be in the name of the minister.

But if the town, with or without the resolve, had power to sell and convey the estate, yet they have never exercised this power by vote or any other corporate act, either conveying the estate, or authorizing any other person to convey it; and the deed of the treasurer is therefore void, for want of authority in him to make it. Neither does any thing pass by the deed, even if the treasurer had been authorized, the deed not being made in the name of the town, but in that of the treasurer. The law which requires that the acts of an attorney should be done in the name of his principal applies with equal force to the case at bar. *Fowler v. Shearer,* 7 *Mass.* 14. *Elwell v. Shaw,* 16 *Mass.* 42.

If any right of action exists against the defendants, yet the remedy in the present case is misconceived. The action for money had and received will not lie, no money having been received. The defendants were authorized to sell the land and place the proceeds at interest. They have been guilty of no neglect in not collecting the money, having never been required so to do; and they are not liable in trover for not delivering over the notes, they never having been demanded. *Jones v. Brinley,* 1 *East* 1.

But if the plaintiffs are entitled to recover, and in this form of action, the defendants ought to be allowed in offset the sums

they have paid for parochial purposes, and for which they might have applied this money. If they have voluntarily taxed themselves, when they might have used this fund, thereby leaving it to accumulate, there is strong ground in equity for their claim to be allowed the benefit of it against the present demand.

WESTON J. delivered the opinion of the Court as follows.

It is first objected in this action that the grant of the lot of land from the proprietors of the *Kennebec* purchase *July* 9, 1777 having been made to the town of *Winthrop* in trust for the use of the ministry, the legislature could not, without violating the rights of that town, permit the town of *Readfield* to enjoy a portion of it, by the act of *March* 11, 1791 incorporating the latter town, which before constituted a part of *Winthrop*.

It is generally true that upon the division of towns, the rights, duties and obligations appertaining to, and imposed upon, the whole town prior to its division, remain to, and devolve upon the ancient town ; and the new town can neither claim the one, nor be called upon to perform the other, unless it be otherwise provided in the act erecting the new town. But as it is perfectly equitable that upon such division, each town should share in the property which before was held by all the inhabitants of the territory divided, and that there should be a division also of the duties and obligations to which they had been jointly liable, a provision to this effect is not unfrequently inserted in the acts by which towns are divided, usually originating in compact between the parties concerned. This authority being founded in justice, and having been long acquiesced in by the defendants, must, so far as it has a bearing upon the present action, be considered as rightfully exercised in the act incorporating the town of *Readfield*. How far indeed, by virtue of that act, this specific property could be considered as forming a part of that which was directed to be divided might admit of some doubt, were it not that by the subsequent resolve passed at the instance of both the old and the new town, the right of *Readfield* to a portion of this land is expressly recognized.

It is next made a question, whether it was competent for the

Winthrop *v.* Winthrop.

legislature to authorize the sale of this lot of land by their re-
solve passed *March* 1, 1799, upon the petition of the towns of
*Winthrop* and *Readfield.* By that resolve the respective treas-
urers of the said towns of *Winthrop* and *Readfield* for the time
being were jointly empowered to sell the aforesaid lot of land,
and to give and execute a good and lawful deed or deeds of
the same, in behalf of their respective towns.

At the time of the passing of the resolve there being no set-
tled minister in *Winthrop*, who might by law be seized of the
fee of the land in right of the town, the fee remained in abey-
ance, and the care, custody and profits belonged of right to the
town. 2 *Mass.* 500. Had there been a settled minister, he
might have aliened in fee that portion of the land which apper-
tained to *Winthrop*, with the assent of the town, then having
parochial rights and duties. But there being none in *Winthrop*
or in *Readfield,* whose concurrence could be obtained, and it
being apprehended that the beneficial purposes of the grant
might be more perfectly accomplished by converting the land
into money, with a view to appropriate the income to the use of
the ministry, these towns applied to the legislature for authori-
ty to sell and convey the land for the attainment of this object.
Upon their petition the resolve was passed ; the treasurers of
the respective towns were jointly empowered to sell and convey,
and the said towns were " further authorized and required to
loan their respective proportions of the monies arising from such
sale, and apply the interest thereof to the use of the ministry."
As this was merely a modification of the fund, and not a diver-
sion of it from its original object ; as it was put into a condition
to afford an income, it not appearing before to have been pro-
ductive, it was probably presumed that no fair objection to this
arrangement could be urged by any future minister. The
legislature have frequently interposed their authority in the
same manner upon similar applications ; and it may well be
doubted whether their constitutional power to do so can now be
questioned. But however this may be, we are well satisfied
that it is not competent for the defendants, upon whose petition
the resolve passed, and who have assumed to act in pursuance
of its provisions, to urge this objection.

It has been further contended that the treasurers of the

towns of *Winthrop* and *Readfield* have not effectually and legal-
ly conveyed; not having acted in the name of their respective
towns.    But their authority is derived not from their towns but
from the resolve constituting them agents for this purpose, and
is in our apprehension sufficiently pursued.    Besides, the de-
fendants have availed themselves of the monies produced by
the sales, the grantees have been in possession many years un-
der them, and they cannot at this time be permitted, in their
defence, to question the validity of these proceedings.

We are now to ascertain who were constituted trustees of
this fund, if it was rightfully created.    And here it may be re-
marked that numerous instances might be adduced in which
trustees of school and ministerial funds have been constituted
by legislative authority.    This has usually been done by creat-
ing a corporation for this purpose, consisting of a board of
trustees named in the act, the members being authorized to
perpetuate their existence by supplying vacancies among their
number by election, as they may happen to arise.    In the in-
stance before us, it is sufficiently apparent that it was the in-
tention of the legislature, by their resolve of *March* 1, 1799,
to constitute the towns of *Winthrop* and *Readfield*, respectively,
trustees of their several portions of this fund.    And from the
nature of the fund, and the object to which it was devoted,
there can be no doubt that the trust was reposed in them in
their parochial capacity.    So long as the town of *Winthrop* had
by law duties to perform in this capacity, they rightfully exer-
cised this trust, which was intended to aid them in the perform-
ance of these duties.    But when a portion of a town is erected
into a separate parish, the parochial character of the town as
such ceases.    By the statute of *Massachusetts* of 1786 *ch.* 10.
*sec.* 5. it is provided, " That in all such towns or districts, where
" one or more parishes or precincts shall be regularly set off
" from such towns or districts, the remaining part of such town
" or district is deemed, declared and constituted an entire, per-
" fect and distinct parish or precinct, and shall be considered as
" the principal or first parish or precinct." And it has been
decided that a poll parish, or a parish composed of individuals
living in different parts of a town, without being described by
geographical boundaries, is within the meaning of the statute,

Winthrop *v.* Winthrop.

and when incorporated is considered as being " set off from the town." 7 *Mass.* 441. 445. 8 *Mass.* 96. By the act therefore of the 26 *February*, 1811, incorporating a poll parish in *Winthrop*, the remaining part of the town became the first parish, and the town as such had no longer any parochial duties to perform. To these duties the first parish succeeded; and it also became entitled by law to all the rights and privileges, which appertained to the town in its parochial capacity. 7 *Mass.* 445. 10 *Mass.* 93. The town could have no further use for a ministerial fund; and it would be a gross misapplication of these monies to permit them to be appropriated to other purposes. The first parish in *Winthrop* became therefore the trustees of the fund under the resolve of *March* 1, 1799, arising from the sale of the land thereby authorized, and to them it ought of right to have been transferred upon the creation of the poll parish.

But it is contended that if the rights of the parties are thus to be recognized and established, the plaintiffs have misconceived their remedy, which should have been, after demand, trover for the notes which were taken upon the loan of the money, and which have been renewed from year to year; adding the accruing interest to the principal. These notes however having been made payable to the treasurer of the defendants for many years after they had ceased to have any rightful control over the funds, and being thus by them claimed and assumed, they must be considered as holding the money to the use of the plaintiffs; and this objection cannot in our opinion be sustained.

We are next to consider whether the defendants are entitled to any deduction by way of offset for monies by them paid for the support of the minister from 1807 to 1812 inclusive. So long as the defendants were under obligation to support the minister, they had an unquestionable right to have appropriated the interest of the fund to that object, according to its original destination. But if they deemed it more provident to suffer the fund to accumulate, with a view to the enjoyment of a larger income from it at a future day, and provided other means for the support of their minister to his satisfaction, they ought not now to be permitted to appropriate to

their own use any portion of the fund thus accumulated, in derogation of the interests of those who have succeeded them in the capacity, in which they then acted. While they continued rightfully trustees of the fund, they might have appropriated the interest to the support of the minister; but having no longer any right to act in that character, it is too late for them to claim the appropriation.

The defendants further contend that they are answerable, if at all, to the minister settled in 1807, in whom the fee of the land would have vested in right of his town or parish, and not to the plaintiffs.

If the resolve of *March* 1, 1799 be invalid as against the minister, he is entitled not to the enjoyment of the money, but of the land. If it be valid, we have seen that by its provisions the town in their parochial capacity, and the plaintiffs by succession, and not the minister, are constituted trustees of the fund arising from the sale. This objection therefore cannot prevail.

It remains to determine the effect of the demand made by the minister in *November* 1817 upon the agent of the town of *Winthrop*, for the interest of the fund, from the time of his settlement in 1807 to the time of the demand, which appears in the case reserved. This demand is certainly strong evidence of a disposition on his part to acquiesce in the validity of the sale under the resolve, if in fact it was ever competent for him to impeach it. By his acceptance of the terms of settlement voted and proposed by the town of *Winthrop* in *November* 1806 which appears in the case, he became entitled to the salary therein stipulated. He could not, by any fair construction, be permitted to claim and enjoy the interest of the fund in question, in addition to the salary thus fixed by the agreement of the parties. Upon the plaintiffs by law has devolved the obligation to pay to him the stipulated salary, and to them belongs the accruing interest of the fund, which was designed to aid them in the fulfilment of this duty. The interposition of this demand therefore on the part of the minister cannot have the effect to impair the right of the plaintiffs to recover in this action.

It is to be regretted that the resolve of 1799 so often referred

to, had not been more explicit in its provisions; but we are satisfied that upon a fair application of the principles of law to the facts in this case, the plaintiffs have entitled themselves to

*Judgment on the verdict.*

*Note.* The Chief Justice, having formerly been of counsel with the plaintiffs, gave no opinion in this cause.