## RICHARDSON *vs.* BROWN.

That part of *Stat.* 1786, *ch.* 10, *sec.* 4, which provides that when one or more parishes shall be set off from a town, the remaining part shall constitute the first parish, is still in force in this State.

The grant of land to a town for the use of the gospel ministry, is to be taken to refer to the town in its parochial and not in its municipal character.

In the private statute of 1815, *ch.* 115, *sec.* 6, which requires the trustees of the ministerial fund in *Baldwin* to apply the interest of the fund to the support of the gospel ministry in *Baldwin* "in such way and manner as the inhabitants thereof, *in legal town meeting*, shall direct;" the word "town" is to be construed in a limited sense, as referring to its parochial character only, in which capacity alone it was interested in the fund. And on the division of the town into several parishes, this power to designate the application of the money remains in the first parish.

If not so construed, it would be unconstitutional, as impairing the obligation of a contract.

THIS action, which was a general *assumpsit*, was brought by the agent of the Methodist society in *Baldwin*, against the treasurer of the trustees of the ministerial fund in that town, to try the title of the society to a portion of that fund, or of the interest thereof, by virtue of a vote of the town.

In a case stated for the opinion of the court, it was agreed that in the original grant of the town in the year 1774, there was the usual reservation of one sixty-fourth part for the use of the ministry ; that this part was duly designated and set out ; that in 1816 the legislature of Massachusetts, by special statute, [1815, *ch.* 115,] authorized the sale of these lands by a board of trustees ; directed them to put the money at interest ; and, by the sixth section, provided that they should annually apply the interest arising from the fund to the support of the gospel ministry in that town, in such way and manner as the inhabitants thereof, in legal town meeting, should direct ; and that in default of such annual direction, the accruing interest of that year should be added to the principal. It was further agreed that the lands were sold, and the money put at interest, as the act directed ; that from the year 1819 to 1823, the town voted not to appropriate

the interest for those years respectively ; that in 1824, *May* 3, the Methodist society was regularly incorporated ; that on the 13th day of *September* in that year the town, at a legal meeting, voted to distribute the interest of the fund among the several societies in the town, according to their rateable polls ; the Methodists voting with the other inhabitants ; that in 1825 and 1826, the town refused to appropriate the interest arising in those years ; and that in 1828, at a legal town meeting, the inhabitants of *Baldwin* voted to allow the Methodist society one half the interest accruing from the ministerial fund for that year ; the town of *Sebago*, however, which was formerly a part of *Baldwin*, not voting on this question.

*Greenleaf*, for the plaintiff, argued in support of the claim of the society ; contending that the legislature of Massachusetts had originally made the grant for the benefit of all the inhabitants of the town ; that the corporate town received the legal estate in the land as a trust for that purpose, the object being the religious instruction of all the people, for the general and public good ; that the fee remained thus, when, in 1816, at the request of the inhabitants, the lands were ordered to be sold and the proceeds funded ; that the terms of the act were clear, explicit, and intelligible, giving to all the inhabitants, in legal town meeting, the right to determine in what manner this benefit should be enjoyed ; and that the town had accepted and ratified this statute, giving it the construction now contended for, by their repeated votes on the question of the appropriation of the interest. If this construction needed any support, it might be derived from the spirit of the statute of 1824, *ch.* 254, though in terms this statute is applicable only to lands unsold.

*Longfellow* argued for the defendant, citing *Harrison v. Bridgton*, 16 *Mass.* 16.

The opinion of the Court was read at the ensuing *November* term as drawn up by

Mellen C. J. In this action the plaintiff demands, in behalf of the Methodist society in *Baldwin*, a proportion of the annual interest of the fund, created by the sale of certain real estate

reserved and set apart, by the grantees of a tract of land now composing the towns of *Baldwin* and *Sebago*, for the use of the ministry. The Methodist society was incorporated *May* 3, 1824 ; prior to which time there was but one parish in *Baldwin* ; and since that time a part of the town has been incorporated by the name of *Sebago*. Upon the facts agreed on by the parties, the question is whether the Methodist society is entitled to any portion of the interest of the abovementioned fund.

The 4th section of the statute of Massachusetts, of 1786, *ch*. 10, which is still in force in this State, provides that when one or more parishes shall be set off from a town, the remaining part of such town shall be the principal or first parish ; and the court observe in the case of *Brown v. Porter*, 10 *Mass.* 93, that "independently of the interposition of the legislature for the purpose, the estate in lands appropriated to the benefit of a parish or religious society, by whatever description incorporated, remains with the residue of the original parish or society, and is not in any manner transferred or distributed, by a separation or change among its members, in the territorial limits of the corporation." In the case of the first parish in *Brunswick v. Dunning & al.* 7 *Mass.* 445, the court say, "Every town is considered to be a parish, until a separate parish be formed within it ; and then the inhabitants and territory, not included in the separate parish, form the first parish ; and the minister of such first parish holds by law, to him and his successors, all the estates and rights, which he held as minister of the town before the separation ;—and in case of a vacancy in the office, the town or parish is entitled to the custody of the same, and for that purpose may enter and take the profits, until there be a successor." In *Jewett v. Burroughs*, 15 *Mass.* 464, the court say, "Every town in this Commonwealth, which acts as a town in the settlement and maintenance of a minister, and in erecting and keeping in repair a house for public worship, may lawfully be considered a parish as well as a town, to all essential purposes ; the duties incumbent upon parishes being required of them by the laws, and all parochial property being held by them in their corporate capacity. It is competent, we apprehend, for the inhabitants of towns thus situated to proceed parochially, in all matters

touching the support of public worship and the settlement and maintenance of ministers." In some few instances such may have been the practice; but, generally, towns have transacted, in such case, both the municipal and parochial business, acting as a town.

We have stated the foregoing principles thus particularly, not because they seem to have been contested in the argument, but that, by reference to them, we might with more clearness give our construction of the act of Massachusetts of *February* 15, 1816, on some of the provisions of which the counsel for the plaintiff relies.

We apprehend, and indeed it is admitted by the parties, that the decision of this cause depends on the construction of the sixth section of the above mentioned act; this provides that the trustees, who by the act were authorized to dispose of the ministerial lands and place the proceeds on interest, as a fund, shall annually apply the interest of it to the support of the gospel ministry in *Baldwin*, " in such way and manner as the inhabitants thereof in legal town meeting shall direct." By examining the several sections of the act, we perceive that wherever *Baldwin* is mentioned, it is as a town. On the 13th of *September* 1824, the town voted to appropriate the interest of the fund among the several societies, according to the rateable polls in said societies. In *March* 1828, at the annual meeting, the town of *Baldwin* voted to appropriate and divide the interest of the fund according to law; and *April* 19, 1828, the same town voted to allow one half the interest for that year, to the Methodist society. If we sanction the construction given to the sixth section by the counsel for the plaintiff, we are met by a constitutional objection; for it is contended, and we think correctly, that the legislature had no authority to give a new and different direction to the bounty given by the legislature in 1774, without the consent of all those interested in the grant. It has been settled by the Supreme Court of the United States, in the case of *Fletcher v. Peck*, 6 *Cranch* 87, that a grant is a contract; and the constitution of the United States declares that no State shall pass a law impairing the obligation of contracts. On this point, see also *Proprietors of Kennebec Purchase v. Laboree & al.* 2 *Greenl.* 275, and cases there cited. Long before this act was passed, the title of the ministerial lands had vested in

those by law entitled to them, for the purpose designated in the original grant ; and no rights were impaired or changed by the mere sale of the lands and conversion of them into a cash ministerial fund. But we are not obliged in this case, and surely we are not disposed, to pronounce the act in question as unconstitutional. In conformity with several decisions, and in reference to well known and general usage, we apprehend that the section relied on by the plaintiff, and indeed the whole act, may be understood and construed, as intended to effectuate, on correct principles, a legitimate and beneficial purpose. As has been before observed, at the time the act of 1816 was passed, the town of *Baldwin* constituted but one parish ; and when the legislature was enacting a law for the protection and preservation of ministerial property, we ought not to presume that they intended to disturb vested rights, or change the character and destination of such property, in a manner which had been invariably considered, by courts of law in Massachusetts, as not warranted by settled principles. To preserve consistency, and at the same time give effect to all the provisions of the act, without violation of the rights of any one, we need only to consider the legislature as using the word " town" in a limited sense, and granting to it the specified powers, in its parochial, and not its municipal character ; because, in its latter character, it had no interest in the property in question. At that time the town was also a parish, exercising two different kinds of corporate powers. The natural construction is that the direction to be given as to the appropriation of the interest of the fund, by the inhabitants, in legal town meeting, had reference to the town in its parochial character ; because in that character only was the town interested. As a parish, the town might legally appropriate the interest of the fund, during a vacancy, because, during such period, they are entitled to the profits. As all persons are bound to know what the law is, and to govern themselves accordingly, surely a legislature must be considered as subject to the operation of the same principle, in respect to the constitution. Until 1824, when the Methodist society was incorporated, we are to presume, in the absence of all direct proof on the subject, that the town of *Baldwin* acted according to the general usage, and in town meeting transacted all their business both of

a municipal and parochial nature ; but after the incorporation of the Methodist society, the residue of the inhabitants at once, by law, became the first parish in *Baldwin,* and as such, and under that name, it was their right, and the more proper course for them, to assemble and transact all parochial concerns. But the votes of appropriation of interest were all passed in town meeting, and after the division of the town into two parishes, as the legal consequence of the incorporation of the Methodist society ; of course, those votes were passed by a corporation which had no authority to pass them.    The same discriminating principle was recognized and applied in the case of *Harrison v. Bridgton,* 16 *Mass.* 16.    A ministerial fund, similar to that in the case before us, belonged to *Bridgton,* and when *Harrison* was incorporated, it was composed of part of the towns of *Bridgton* and *Otisfield.*    In the act, it was, among other things, provided " that all property, rights and credits, of said towns of *Otisfield* and *Bridgton* should be received and enjoyed by said town of *Harrison,* according to their proportion of the taxes of said towns, as assessed in the last tax bills." Neither of those towns had been specially incorporated as a parish, and no parish had ever been created within the town of *Bridgton.*    The case is almost exactly like the case at bar.    *Harrison* claimed a proportion of the fund, under the clause above quoted.    The court nonsuited the plaintiff, saying that the fund could not be considered town's property, and could not be disposed of by a vote of the town.    The ministerial fund belonged to it *quasi* a parish, and is to be appropriated only to parish uses.    The case also supports the principles laid down in *Brunswick v. Dunning, Brown v. Porter,* and *Jewett v. Burroughs.*

Whether the construction of the section in question of the act of 1816, which we have given, is the true one or not, does not affect the decision of this cause ; for if the language of the section is not to be construed subject to the limitations, as stated in this opinion, we should feel ourselves bound to pronounce the section unconstitutional ; but we prefer the course we have taken, as more respectful in itself, and in accordance with sound principles, and the presumed intention of the legislature.                          *Plaintiff nonsuit.*