#### FOR THE

## COUNTY OF NORFOLK, NOVEMBER TERM 1830, AT DEDHAM.

##### PRESENT :

Hon. LEMUEL SHAW, CHIEF JUSTICE,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE, }JUSTICES.
Hon. MARCUS MORTON,

---

### COMMONWEALTH *versus* TIMOTHY P. WHITNEY.

Where a judgment was recovered and an execution issued thereon before the death of the plaintiff, and the defendant was committed on the execution after the death of the plaintiff, the Court refused to discharge the prisoner upon the summary process of *habeas corpus.*

HABEAS CORPUS to T. P. Whitney, the deputy-jailer, to bring before the Court the body of Walter A. Baxter. It appeared that Baxter was committed and detained in prison on an execution against him in favor of George M. Gibbens, dated September 10th, 1830, which was issued on a judgment rendered on September 4th ; that Gibbens died on October 3d ; that the commitment was made on October 11th ; and that the prisoner's board was paid by Moses Draper, the attorney of Gibbens in the suit.

An order of notice having been served upon Draper and no appearance being entered, the case was argued by *Metcalf* in behalf of the prisoner.

On the return of the writ, *Metcalf* proposed to rest the prisoner's claim to a discharge from imprisonment, solely on the provisions of *St.* 1787, *c.* 29, and *St.* 1821, *c.* 22, which, he contended, were wholly inconsistent with the right of commitment in execution after the plaintiff's death. But the Court intimating a desire to be referred to the common law authorities on the point, he afterwards cited the following cases.

<span style="float:right">Common-<br>wealth<br>*v.*<br>Whitney.<br>*Nov. 3d.*</span>

1. Where the *plaintiff* is dead.        *Nov 5th.*

If a plaintiff dies after a *fieri facias* or an *elegit* is awarded, the sheriff may levy the debt. *Aliter*, if execution is not sued out at the time of the plaintiff's death. *Thoroughgood's case*, Noy, 73 ; *Harrison* v. *Bowden*, 1 Sid. 29. *A fortiori*, if goods are seized in execution before the plaintiff dies, the sheriff shall proceed. *Clerk* v. *Withers*, 6 Mod. 290 ; 11 Mod. 35 ; Holt, 303, 646 ; 2 Ld. Raym. 1072 ; 1 Salk. 322.

The reason assigned in the first class of cases, is, that goods, &c. are, by the common law, bound by the award of execution. And even since the *St.* 29 *Car.* 2, they are bound from the delivery of execution to the sheriff. Besides, money made on a *fi. fa.* is brought into court by the English law ; and though the plaintiff be dead, the court will order it to be paid to his representative, as soon as he shows his authority. These reasons have no operation in this Commonwealth, and do not apply, even in England, to the case of a commitment in execution.

In the second class of cases, an additional reason is often assigned *obiter*, namely, that by the seizure of his goods in execution, the defendant is discharged of the debt. The former reasons, however, are sufficient, and the latter may well be questioned. See cases collected in Yelv. (Metcalf's edit.) 44, note 2 ; *The King* v. *Sloper*, 6 Price, 114 ; *Churchill* v. *Warren*, 2 N. Hamp. R. 298 ; *Folsom* v. *Chesley*, ibid. 432.

The only intimation found in the books, that a *ca. sa.* can be executed after the death of the plaintiff, is by *Croke* J. in *Cleve* v. *Veer*, Cro. Car. 459. The digests, however, and books of practice, contain no such doctrine. Com. Dig. *Execution* ; Bac. Abr. *Execution* ; Sellon's Pract. *ch.* 12.

2. Where the *defendant* is dead.

443

A *fi. fa.*, if tested before the defendant's death, may be executed after ; *Vincent* v. *Dale*, Dyer, 76 *b* ; *Parkes* v. *Mosse*, Cro. Eliz. 181 ; Mo. 352 ; *Anon.* 2 Vent. 218 ; *Anon.* 8 Mod. 225 ; *Needham's case*, 12 Mod. 5 ; *Parsons* v. *Gill*, Com. Rep. 117 ; *Springer* v. *Sommerville*, Bunb. 271 ; *Eaton* v. *Southby*, Willes, 135 ; *Bragner* v. *Langmead*, 7 T. R. 20 ; *Waghorne* v. *Langmead*, 1 Bos. & Pul. 571 ; because the property is bound from the award of execution, as against the debtor, and from the delivery (since the statute of *Car.* 2,) as against purchasers, &c.

So in this Commonwealth, goods attached on mesne process are held after the death of the defendant ; but they cannot be seized in execution unless there was an attachment. *Grosvenor* v. *Gold*, 9 Mass. R. 209.*

But if a *ca. sa.* may be executed in England, after the plaintiff's death, it cannot be here. The form of the writ of execution prescribed by *St.* 1784, *c.* 28, (a revision of the *Prov. St.* 13 *Will.* 3, *c.* 11, passed in 1701,) manifestly supposes the plaintiff to be alive when the defendant is committed. The precept is to detain the defendant until he pays, or is *discharged by the creditor*, or by order of law.

Since the *St.* 1787, *c.* 29, at least, no execution debtor can be committed after the creditor's death. On application by the debtor, a justice of the peace is to issue a notification *to the creditor*, that the prisoner desires to take the poor debtor's oath ; and service is to be made *on the creditor*, *if he live* in the Commonwealth, or on his executor or administrator ; and if he *live* out of the Commonwealth, then on his agent or attorney, &c. The provision for serving notice on the creditor's executor or administrator, clearly applies only to cases where he dies after the commitment of the debtor, for the notice *is to be directed to the creditor himself.* If the plaintiff is dead at the time of the commitment, there can be no legal notice ; and if no administration is taken on the plaintiff's estate, the defendant must be imprisoned for life.

So the *St.* 1821, *c.* 22, provides that poor prisoners confined in close prison shall be supported at the charge and ex-

---

* But by a recent statute, the attachment is dissolved by the death of the defendant and a grant of administration. *St.* 1822, *c.* 93

Common-<br>wealth<br>v.<br>Whitney.

pense of the *creditor*. A deceased creditor cannot be at charge for the debtor's support, nor can he be required to advance money or give security for the prisoner's support in jail. Nor can he have an attorney. Attorney and constituent are correlative, and the death of either *per se* dissolves the relation.

If therefore by the common law, a *ca. sa.* might be executed after the plaintiff's death, it cannot since the passing of these statutes. They, by necessary implication, have repealed or abrogated such law.

Thus the *St.* 1810, *c.* 114, exempting from imprisonment on execution upon judgments founded on contract, where the debt or damage does not exceed five dollars, has repealed the law (whether common or statute) by which defendants might be *held to bail*, where the debt did not exceed that sum. *Green* v. *Morse*, 5 Greenleaf, 291. So the statute exempting the body of a debtor from further imprisonment, on the execution, &c. after he has taken the poor debtor's oath, exempts him also from arrest on *mesne process* in an action of debt on the judgment. *Willington* v. *Stearns*, 1 Pick. 497.

SHAW C. J. delivered the opinion of the Court. This is certainly a question of considerable intrinsic difficulty, involving questions of great importance, and it is to be regretted that we are obliged to hear it on a summary process, and without notice to those interested. It has been ably argued for the prisoner, but the argument was necessarily *ex parte*. The case proceeds on the ground that the plaintiff in the execution is deceased, and the affidavits show that no will has yet been proved, and no letters of administration issued ; and although we ordered notice to the attorney of record, by whom the suit was brought and judgment recovered for the plaintiff, yet he has not appeared, and according to the argument for the prisoner, as attorney and constituent are correlative, by the death of the constituent the authority of the attorney is at an end, so that in truth there is no one, who can represent the interest of the creditor.[1]

The facts shown by the return are, that the judgment was

*Nov. 6th.*

---

[1] See Revised Stat. *c.* 98, § 3.

rendered on the 4th of September, execution issued on the 10th, the plaintiff died on the 3d of October and the prisoner was committed on the 11th. It does not appear, whether the execution was in the hands of the officer for service, prior to the death of the plaintiff, or not. If the execution had been delivered to the officer, for the purpose of making the arrest, and he were to arrest the prisoner, without notice of the death of the plaintiff, it would be strange to say that an act which he was bound to do, in the regular discharge of his duty to the creditor, as an officer, should render him liable for false imprisonment. It is the right of bail to surrender his principal to an officer holding the execution; would this right be defeated by the death of the plaintiff, and could not the officer hold the prisoner in custody, upon such surrender? These questions present difficulties, not being provided for by any rule of law or provision of statute.

The argument drawn from the form of the execution and from the statutes, is certainly very forcible, that the execution is provisional, the debtor to remain in prison till he be discharged *by the creditor*, or by order of law; and the statutes all presuppose the creditor to be capable of acting and having notice.

But the difficulty with this argument is, that it would seem equally to require the prison doors to be thrown open immediately on the death of the plaintiff, although the prisoner were committed in his lifetime. Suppose the case is a lawful commitment, for a large amount, and on the day after the commitment, and before any notice is issued, the plaintiff dies. There is no longer any creditor by whom the prisoner can be discharged, the authority of his attorney is at an end, he neither *lives* within the Commonwealth nor without the Commonwealth, no notice can be given to him, he can give no security for the prisoner's support, some time must be taken either to prove a will or take administration, and in the mean time, although the sheriff was right in committing, the jailer has no longer any power to detain the prisoner, and he must go at large. And even if the notices had been given before the death of the plaintiff, and no administrator appointed before the day fixed

for administering the oath, the case would not be free from
difficulty. The statute certainly contemplates, that the credi-
tor, or his executor or administrator, may be present if he
sees cause. Could the prisoner be admitted to his oath, when
it is impossible for any one representing the interest secured by
the judgment and execution to be present ?

Commonwealth
v.
Whitney.

439

But yet it is impossible to imagine that the legislature, who
have shown so much solicitude to provide effectually for the
relief and discharge of poor and insolvent debtors, should
have contemplated, that a debtor should be subjected to an in-
definite imprisonment, when no administration is taken out on
the estate of his creditor, or where it is long delayed by con-
troverted claims to administration. We can only consider, that
being a case of rare occurrence, it has been overlooked and
unprovided for by statute.

The Court are not prepared to say that the imprisonment
was unlawful, so as to entitle the prisoner to his discharge
forthwith, as a matter of right, but if it was, he has his rem-
edy by writ of *audita querela*, in which the facts could be put
in issue and the rights of the parties more regularly settled.
*Lovejoy* v. *Webber*, 10 Mass. R. 101. But it is readily per-
ceived that it might be a case of great hardship, should an un-
reasonable time elapse, after the death of a creditor, and no
administrator be appointed, and may require an extraordinary
remedy.

But the right to a discharge as a poor prisoner, depends
upon statute, and the existing provisions of the statute do not
reach such a case ; and the Court cannot know and have no
means of knowing, that the prisoner is poor, or insolvent, or
unable to pay the debt for which he stands committed.

The writ of *habeas corpus* is a summary process ; the pow-
er given by it, is to be exercised under a sound discretion,
and with reference to all the circumstances of the case. The
proceeding at present, is of necessity *ex parte*. No unreason-
able time has yet elapsed since the death of the creditor, for
the appointment and qualification of an administrator. What-
ever claims the prisoner might have to the extraordinary inter-
position of the power of the Court for his relief under other

circumstances, we do not at present perceive sufficient ground upon which to discharge him from his imprisonment, on this process.[1]

*Prisoner remanded.*