Earle, J.
(sitting for Mr. Justice Harper) delivered the opinion of the Court.
The mode of proceeding by writ of audita querela, has never been used in this State, at least never used technically and according to the precedents. It is occasionally resorted to, as a common law remedy, in several of the States; in Massachusetts, New Yolk and Maryland; as late as 1810 in Massachusetts, and 1820 in New York. 10 Mass. Rep. 101; 17 Johns. Rep, 484. It is of rare occurrence, however, either in England or in this country. The indulgence of the Courts, in granting summary relief upon motion, in all cases of evident injustice, illegality and oppression, has rendered useless the writ of audita querula, and driven it out of practice ; and the modern course of proceeding, both in England and this State, is, to interpose in a summary way, in all cases where the party would be entitled to relief on audita querela. 3 Bl. Com. 403, 1 Bos. & Pul. 428; 1 Salk. 93; 4 Johns. Rep. 190. Where the facts are doubtful, and the Court should be unwilling or unable to decide them, an issue might be ordered, which I think has been the practice in this State; and then such an issue would *300 become tlie substitute for the formal and technical writ of au-_ . . _ _ . chla querela, and answer the same end. Or the party comP^a™n8 might be put to that writ, as a common law mode of proceeding, which is a regular suit, where the parties may take jssue jn jaw 02 jn fáot, and a regular judgment must be pronounced. 1 Mass. Rep. 101; 17 Johns. Rep. 484. 1 should be unwilling to say that it is so far obsolete that our Courts would not allow it, if preferred.
The present motion is therefore considered as a substitute for the writ of audita querela, and as the opinion of the Court has been formed upon the case made by the actor in the motion, the material facts of which are not controverted, its judgement will be pronounced as if they had been found by a jury, on an issue on audita querela. The question then is, whether the case made, if found on audita querela, would entitle the party complaining to the relief which he seeks. As the authorities mainly relied on by the counsel for the actor in the motion, were cases of audita querela, it may be well to ascertain what was the object and the nature of that writ. “ An ciudita querela is a writ to be delivered against an unjust judgement or execution, by setting it aside, for some injustice of the party that obtained it, which could not be pleaded in bar to the action; for if it could be pleaded, it was the party’s own fault, and therefore he shall not be relieved, that proceedings may not be endless.” 1 Bac. Ab. 307. Aud. quer.
It is where a defendant, against whom judgement is recovered, and who is therefore in danger of execution, or perhaps actually in execution, may be relieved upon good matter in discharge, which has happened since the judgement, where he hath good matter to plead and no opportunity to plead it. 3 Bl. Com. 403. “ An audita querela to prevent or recall an execution, may be sustained upon some ground which occurred after the rendition of the judgment, so that the debtor had no opportunity to plead it or give it in evidence.” 12 Mass. Rep. 268; and so are all the authorities. It is a proceeding to prevent or recall, to- avoid or set aside, an execution, upon matter subsequent, which, in law or equity, shews that it should not have been allowed, or that it is discharged, and that the .party complaining is not liable ; as where execution is sued .out upon a statute before the time. 1 Rol. 307, 120. Or upon a statute taken without authority, or not duly sealed. Cro. El. 233. So if a man pay a judgement and be afterwards taken in execution, (2 Cro. 29) or a party discharged under the insolvent act, after judgement may be relieved by audita querela. 4 Johns. Rep. 191. So if a man, being served with process, pay the debt, on the promise of the plaintiff to discontinue, and he proceed to obtain judgement and. execution. 1 Mass. Rep. *301 101. In all these cases, and in all that I can find, the execution is avoided or set aside; But the niotion now before the Court, is not to avoid or set aside the execution, which is admitted to have been regularly sued out upon a judgement which is yet in full force, and which is not alleged to be unjust, fraudulent or unlawful. The motion is to set aside a levy and sale, made according to all the forms of law, of property which is admitted to have been bound by the judgement and liable to the execution. It is a motion to prescribe the mode of enforcing the execution, and to restrict the legal rights of the plaintiff according to a supposed principle of equity, admitting the ultimate liability of the property in question. It seems to me that there is no analogy between this and the cases of au-dita querela reported in the books; nor docs it come within their principle. It is said if the conusor (in stat. mer. or staple) enfeoff several men of several parts of the land, and after, the conusee sues execution of the statute against one only, he shall have an audita querela upon this matter. 1 Bac. Abr. Aud. quer. B; and so in 2 Bac. Abr. 698, to the same effect, and more at length; and this is the authority mainly relied on. It might be enough to reply that the statutes of 13 Ed. 1. C. 3, de mercatoribus, and of 27 Ed. 1. C. 9. stat. staple, were not expressly made of force in this State, and if they are so held by construction, those of 16 and 17 Car. 2, C. 5, and 22 and 23 Car. 2, C. 2. by which the right of the feoffee, in the cases supposed, is taken away, must also be regarded as of force, and then there is an end of the authority. The process of extending lands upon the statutes merchant and staple in England, bears no resemblance to our sale on execution. There the execution was granted against the lands, goods and chattels, and they were to be delivered to the conusee by a reasonable extent, till the debt be levied. A purchaser of part, after statute acknowledged, if the plaintiff sued out execution against him alone, might, by audita querela, set aside the execution, because it did not conform to the statute which required the execution to be extended on all the lands. And there was good reason for this, for if the whole were extended, the feoffee would be soooner reinstated in possession of his portion, as the debt would be sooner paid. It was error on the face of the execution. Besides, it was a continuing execution, not satis, fied and extinct by delivery of the’ lands, but remaining open and operative until paid by the rents and profits. To produce any analogy, it must be supposed that the feoffee, after extent, should permit the plaintiff to remain in possession until his execution was satisfied, and then bring his audita querela. No such case can be found, nor can any case be found of relief by audita querela, where the execution has been satisfied, paid off, *302 or otherwise discharged by the party complaining. To render these cases analogous, in another mode, let it be supposed that Screven, instead of one parcel, had aliened all his land, including the lots in Grahamville, to different feoffees; all being liable, the claim of the actor, Besseleu, to subject the other lands to levy and sale, would have been as strong as now. And yet I do not perceive how the plaintiff could have been controled in his selection, or if he had sold Besseleu’s first, how relief could have been granted. The judgement binds all, and binds equally. I cannot understand degrees of more or less in a legal lien. The plaintiff cannot sell all the lands, if one parcel will suffice; nor would it, in the case supposed, be the interest of one feoffee, that all should be sold, his own as well as the others, in order that the execution should be paid off, and the surplus be distributed, as it is in the case of the feoffee of the conusor on the stat. mer. and stap. that all the lands should be extended, in order that he might be the sooner reinstated. The plaintiff, therefore, .would necessarily select the property he would sell, and it would be a singular application to the Court of law, to prescribe the order in which he should sell; and it would be still more singular, after the sale of one parcel, to make' a motion to set it aside, because he had no't sold one instead of another, or because he had not sold the whole. I think it will be seen that there is no analogy, and that the supposed authority has no weight. Putting out of view the cases of audita querela, and considering this question by the rules which govern the Court in granting summary relief on motion, is the actor in the motion entitled to the relief which he seeks, on the ground, that the conduct of the sheriff and plaintiff was unlawful, or that there was partiality and injustice ? The cases of relief, either by audita querela or on motion, have been before execution sued out, or before satis, faction while yet m fieri, and therefore within the control of the Court from whence it issued. There have been instances of setting aside a levy and sale, too, for some manifest illegality, but, I apprehend, only at the application of the defendant or party to the record, and not at the instance of a third person, who only set up a claim to the property sold. In the case at bar, a regular and lawful execution was placed in the sheriff’s hands; its mandate was to sell, and the sheriff has sold. The execution is no more ; it is extinct, having performed its office. The sheriff has sold what he had a right to sell. The plaintiff had a right to his money, and he has received it; and the purchaser has acquired a legal and perfect title to the lands. It can never be allowed that all this shall be done away, because Besseleu may have to sue Screven to recover back.
This is said not to be a case of contribution, but of exemption. *303 But it is not. The party does not claim to exempt the land, but only to postpone its liability. Whatever may have been the result of such a motion, if made before sale, when no new rights had vested nor old ones been extinguished, it is now too late. It becomes a question of compensation between him, the defendant, and the junior judgement creditors, at whose instance the sale is said to have been made, and who expect to reap its benefits. If, under the circumstances of this case, the property sold was equally bound; if the sheriff had a legal right to sell, then, the notice does not affect the purchaser’s title. He had a legal title, and therefore a perfect one. He could have recovered in trespass, and may now, being in possession, successfully defend against Besseleu. To set aside such a sale, and subvert such a title on motion, would be a novelty; and if the sale be allowed to stand, it would be preposterous to compensate Besseleu, by compelling the plaintiff to refund the proceeds.
I do not think, therefore, that the conduct of the sheriff and plaintiff was unlawful, in the only available sense of the word. It is said, then, partiality and injustice afford a ground of relief. These are vague terms. The judgment and execution cannot be said to be unjust, without derogating from the Court, and partiality is not repudiated in the law. A failing debtor is allowed to show partiality by preferring some creditors to others. A plaintiff having a judgment against several for the same demand, may show partiality by laying his execution on the goods of either. Where a defendant has put away his property, bound by execution, in the hands of several persons, the plaintiff may select the one who shall suffer. And one who holds the bond of a principal, with several securities, may sue one alone and omit all the others. There is nothing in the objection. What would be the result of such an application, on a proper case made before sale, this Court will not anticipate, and forbear to express an opinion.

The motion is dismissed.

Johnson and O’Neall, Js. concurred.