Parker, C. J.
The first question which arises in this case is, whether the land demanded was ever ministerial *land, properly so called, of which the minister for the time being was seised in right of his parish.
This is denied by the counsel for the tenant, because the deed conveying the premises from Breck to Chandler was made to him as treasurer of the town of Worcester; so that the land became the property of the inhabitants of that town, in their civil and corporate capacity, but not as a parish or religious society.
But the motive and intent of the parties to this conveyance are apparent from the deed itself, it being expressly stated that the land was to be appropriated as a parsonage; and this being conformable to the vote of the town authorizing Chandler to purchase. At the time of the execution and delivery of this deed, the town of Worcester constituted one parish ; and it was the usage of all our towns anciently, before they became divided into parishes, to transact their parochial concerns at town meetings; making. no difference in the forms of their proceedings, when acting upon those subjects, or upon matters of mere municipal or political concern.
The grant of Breck to Chandler, who was the appointed agent of the town, was therefore a grant to pious uses; so as to come within the provisions of the provincial act of 1754; and the ministers of the town were entitled to the use of the property, and became seised successively, in right of their parish, which in this instance was the town. And according to other- provisions of that act, the substance of which has been reenacted since the adoption of the constitution, (5) this land was unalienable, except by the minister, with the assent of the town or parish over which he was settled.
The next question, then, is, whether the tenant has shown such alienation as comes within the letter or the spirit of the act then in force. Upon the application of the minister, the town voted, in 1764, to grant the premises to him in fee simple, for a certain consideration' agreed upon between the parties; and pursuant to that vote, a committee, appointed for the purpose by the * town, in 1765, by deeds released and sold the same to Mr. Maccarty, in the manner determined by that vote.
*291 Was this an alienation according to the true intent and moaning of’ the act ?
The town had not the fee in them, and therefore could not convey it. The fee was before in the minister, and this act of the town did not enlarge his estate ; for no title being in the inhabitants, according to the principles of the act of 1754, as explained in the case of Weston vs. Hunt, nothing passed by the deed of the town.
This being the case, the subsequent conveyance, attempted by the immediate grantors of the tenant, under the will of their father, who had been the minister to whom the grant of the town was made, must be ineffectual; for their father was seised only during the continuance of hiá ministerial office, which had ceased before this conveyance was made; and his executors derived no power, under his will, to make a title to this land.
It has been suggested that the vote of the town, on which the deed of the committee was founded, might be considered as the assent of the town within the act; and that a subsequent alienation, made by the minister, might be coupled with this assent, and thus a perfect alienation be made, within the equity of the act.
We should be glad to adopt this reasoning in support of the tenant’s title ; because we cannot but lament that a religious society should endeavor in this manner to avoid a conveyance, made, as far as appears, fairly by their predecessors; they having received a valuable consideration therefor. But we must administer the law, and leave it to the consciences of those who carry on the suit to estimate the true character of the transaction.
If Mr. Maccarty had aliened the premises in his lifetime, with reference to the vote of the town, as expressive of their assent, we do not know but the alienation would have been valid. But his power over the estate ceased with his life ; and he could not, if it had been * his intention, communicate an authority to his executors to dispose of them. The deed of the executors, therefore, as it respects the conveyance of title, is void, and the tenant can claim no benefit under it.
The effect of this decision will probably be, that an action upon the covenant to warrant will be brought; and that the estate of the deceased pastor of the first parish will be taken from his innocent heirs, to indemnify the tenant for the loss of a title which this very parish assisted to create, and for which they have once received a valuable, and, in their estimation, an adequate, consideration. But we have no right to regard the consequences of decisions which arise from a necessary application of the law to the facts brought before us. Judgment on the verdict.

 Stat. 1785, c. 51.