## The inhabitants of PORTER *vs.* GRISWOLD.

The usual reservation of a certain portion of lands for public uses, in a grant by the State to individuals, is a condition subsequent; imposing on the grantees the duty of impartially setting apart the quantity so reserved, for the designated uses.

When such lands are so set apart by vote of the proprietors, and designated in severalty, the fee thereby passes from the original proprietors, and becomes vested in the several parties for whose respective benefit the reservation was made, if in being, and capable of taking the estate.

Previous to the existence of such party capable of taking, the fee in such lands is not in the State, nor in the town as successor to the corporation of proprietors, for the purposes of custody; but is in the original grantees and their heirs.

THIS was a writ of entry, in which the demandants counted on their own seisin of the lot *No.* 33, in range *B.* in the town of *Brownfield*; and a disseisin by the tenant.

The controversy was upon the title of the demandants to this lot, as one of the lots reserved in the grant and designated in the division of the township of *Porterfield*, for the first settled minister.

It appeared that this township or plantation was granted by Massachusetts, *Sept.* 21, 1793, with the usual reservation of a portion for public uses, viz. for the ministry—for the first settled minister—schools —college—and future appropriation of the government. These lots were designated by the proprietors on their plan, and in their deed of partition, *March* 19, 1795; and the lot in question was assigned, with others, " to the first settled minister," without more saying.

The plantation of *Porterfield* was organized as early as the year 1803.   On the 20th day of *February* 1807 a part of the plantation, including a little more than two thirds of its territory, but not including a part in which the lot demanded is situated, was incorporated into a town by the name of *Porter*.   On the 27th day of the same month, the residue of the plantation, including this lot, was annexed to *Brownfield*.   There had never been a settled minister in *Porter*.

Porter v. Griswold.

*Brownfield* was incorporated in 1802 ; and the original grant of this township contained the like reservations of lands for public uses, as had been made in the grant of *Porterfield.*   The Rev. *Jacob Rice* became the first settled minister in *Brownfield,* Oct. 15, 1806.

The title of the tenant was under certain mesne conveyances from *Joseph Howard* ; who claimed title by virtue of a quitclaim deed from Mr. *Rice,* dated *May* 25, 1810, conveying all his " right, title and interest in and to all the ministerial and parsonage right of land in *Brownfield,* it being the land granted by the government of said Commonwealth to the first settled minister ; meaning all the right he had in consequence of being the first settled minister in *Brownfield.*"

Upon these facts *Weston J.* directed the jury to find for the tenant ; reserving the legal rights of the demandants to maintain the action, for the further consideration of the court.

*Greenleaf,* for the demandants.   The proprietors of *Porterfield* having by law ceased to be a corporation at the end of ten years after the final division of their common lands, which was *March* 10, 1795, the fee in the public lands, upon such dissolution, reverted to the Commonwealth. 2 *Kent's Com.* 246, 247 ; *Co. Lit.* 13 *b.* The subsequent incorporation of the town of *Porter* was a renovation of the proprietary corporation, so far as the custody of the public lands was concerned ; or, the erection of a new corporation, as its successor.   And such new corporation may claim all the rights of the old, against the sovereign, and all others, except the original owners.   2 *Kent's Com.* 248.

The reservation in question was for the public good ; to induce the early settlement of a teacher of religion and morality.   It was founded in deep considerations of public policy, and ought to be freely expounded, to effect the intent of the legislature.   Any exposition, therefore, which necessarily leads to a destruction of the thing granted, or to the loss of all substantial benefit from the grant, ought to be rejected.   Now in the case of the custody of school lands, and those granted for the use of the ministry, the town confessedly succeeds to the proprietors.   Why not as to these also, which are always enumerated as public lands ? *Stat.* 1821, *ch.* 118, *sec.* 23 ; *Weston v. Hunt,* 2 *Mass.* 500 ; *Brown v. Porter,* 10 *Mass.*

93; *Stat.* 1824, *ch.* 254. In *Shapleigh v. Pilsbury,* 1 *Greenl.* 271, the proprietors still existed as a corporation; and were themselves the original grantors.

The designation of the lots having been made by the proprietors as a corporation, and not in their individual capacities, no right could revert to their heirs; but the custody of the land necessarily went to their successors. Proprietors act together only by the tie of common interest. When that is gone, by the sale or division of their lands, they have no inducement to take care of the public lots. They are not compellable so to do. Should they divide these lands among themselves, and strip them of their timber and wood, if the fee remains in them, none can call them to account. And even if some proprietors might wish to preserve the lands; yet after the lapse of years, and the dispersion of families, it might be impossible to ascertain all who ought to join in an action. Thus the benevolent designs of the legislature must necessarily be defeated.

The subsequent annexation of this lot to *Brownfield* avails nothing, since that act conveyed no title, but merely jurisdiction, to the town. The reservation was for the first settled minister in *Porter.* On no legal principle could Mr. *Rice* claim the land, as he was not the first settled minister of this town, but of the former. Besides, his rights, as first settled minister, were perfected by his settlement in 1806; after which he could acquire no new title in that character. *Baptist Soc. v. Wilton,* 2 *N. Hamp.* 508; *Bristol v. New Chester,* 3 *N. Hamp.* 530.

*Fessenden,* for the tenant, contended that lands reserved for the first settled minister remained in the Commonwealth, in the same manner as those reserved for its future appropriation; and that on the annexation of this lot to *Brownfield,* no person having then come *in esse* to take, it passed as a grant to the first settled minister in that town; and from him regularly to the tenant. But that, on any principle, *Porter* was never seized of the lands. They were reserved for the benefit of one part of the plantation, as well as of another; and the part to be benefited by this lot was annexed to *Brownfield,* before *Porter* came into existence. The former town, therefore, if either, is entitled to the custody and advantage of the lot reserved.

MELLEN C. J. delivered the opinion of the Court at the adjournment of *May* term in *Cumberland*, in *August* following.

It is a well known fact, that for a long series of years, when the legislatures of Massachusetts, with the most commendable motives, made grants of tracts of land to one or more purchasers, either by special resolves, or by deeds, executed by certain constituted agents for the Commonwealth, a clause was inserted in the grant or deed, whereby certain proportions of the tract were reserved, as it was generally expressed, for the use of the ministry—for the first settled minister—for Harvard College, and for the use of schools. Though such language, so used, does not in strictness constitute a legal reservation, yet we believe it has been generally understood by all concerned to amount to a condition subsequent, imposing on the grantees the obligation to cause the specified proportions to be impartially set apart and assigned for the specified purposes; and when so appropriated in severalty, as the general usage has been, the fee in such parcels, so appropriated, has been considered as vesting in the intended grantees, if *in esse* at the time; if not, then as soon as they come *in esse* and are capable of taking the estate. This is believed to be the practical understanding of the language in which these reservations are secured, for the benefit of those for whom the bounty is intended. The vote of the purchasers or proprietors, whereby the lands reserved are set apart and designated, operates to pass the fee to the respective owners, in the manner above mentioned. In the case of *Rice v. Osgood & al.* 9 *Mass.* 38, it appeared that a grant of a township was made to one *Brown*, on condition that he should give bond to the treasurer of the then Province of the Massachusetts Bay, conditioned among other things, that he should grant out of the premises certain proportions, and for certain purposes, similar to those expressed in the deed in the present case. The court considered the fee of the township as having passed to *Brown*, and that it was his duty to grant and appropriate the specified proportions for the objects mentioned; and by neglecting so to do, he had violated the condition of the grant, and that the remedy was with the Commonwealth to enforce the fulfilment of the

condition. Though the language of the grant to *Brown* was more explicit than that which has usually been employed for similar purposes; yet we apprehend the same principles may be equally applicable to both, for the purpose of effecting the object in view. See also *Brown v. Porter*, 10 *Mass.* 93; *Harrison v. Bridgton*, 16 *Mass.* 16; 3 *Dane's Abr. ch.* 76, art. 10, sec. 20.

The law as to parsonage lands is familiar. Until a parish is formed, capable of taking and holding the assigned property or lots, the fee remains in the grantees or proprietors, and they have a right to the custody and profits. *Propr's of Shapleigh v. Pilsbury*, 1 *Greenl.* 271. When a parish or a town, acting as a parish, is formed, capable of taking, such parish is entitled to the custody and profits, and also during a vacancy, after there has been a settled minister. When there is such a minister, then he is seised of such lot or lots *in jure parochiæ*, and entitled to the profits. *Weston v. Hunt*, 2 *Mass.* 500; *First Parish in Brunswick v. Dunlap*, 7 *Mass.* 445; *Brown v. Porter*, before cited; *Shapleigh v. Gilman*, 13 *Mass.* 190; *Austin v. Thomas*, 14 *Mass.* 333. But as to such lot or lots as are set apart and assigned to the first settled minister, the principles above stated are not applicable. The parish have no control over them or interest in them. They have nothing to do with them. Such lands are in the nature of a premium; and the first settled minister immediately becomes the owner of them in fee simple. Until a minister is settled, the fee remains in the grantees, as appears also by the case of *Propr's of Shapleigh v. Pilsbury*, in the same manner as the fee of parsonage lands does till a parish comes into existence, capable of taking them; but as soon as such minister is settled, the absolute fee vests in him, as before stated. The act incorporating the town of *Porter*, and the act annexing to *Brownfield* that part of the plantation of *Porterfield*, in which the lot demanded is situate, are both of them perfectly silent on the subject of the lands intended for the ministry—the first settled minister—Harvard College, schools and future appropriation. In this case the demandants count on their own seisin in fee simple; and now, what is the proof of this alleged seisin? They sue as the inhabitants of the town of *Porter*, in their corporate capacity; but the township was not granted to them, but

Porter *v.* Griswold.

to a few individuals, from whom they have not deduced any title whatever. It does not appear that the purchasers were ever incorporated. If on legal principles the Rev. Mr. *Rice* was, in respect to the lot in question, the first settled minister, then the fee vested in him, and from him has been conveyed to the defendant who is in possession ; and on this ground the demandants must fail. If on legal principles Mr. *Rice* was not the first settled minister, in respect to the lot demanded, then no person has as yet existed capable of taking the same, inasmuch as there has never been any settled minister in *Porter* ; of course the fee remains in the original grantees or their heirs, and on this ground also the action must fail. We may go one step further and say, that if the title to the reserved proportions for the uses specified, remains in the Commonwealth, until grantees appear capable of taking, as some have supposed to be the law, the consequence would also be equally a decisive bar to this action.

We are not able to perceive any title in the demandants, or any privity whatever between them and the original purchasers of the township ; and if they or their heirs or assigns are not desirous of having the custody and profits of the demanded premises, there seems no occasion or reason for the interposition of strangers, to disturb the possession of the tenant. We are all of opinion that the action cannot be maintained ; accordingly the verdict is to be set aside, and a nonsuit entered.