## NATHANIEL WELLS *vs.* JOHN HEATH.
## JOHN PRINCE *vs.* SAME.

A testator devised his farm to the selectmen of a town " and their successors in office forever," in trust " yearly and every year to appropriate and pay all the rents, incomes and profits of the said farm for the support of a gospel minister or ministers in said town, of the Congregational denomination; the said selectmen to be always accountable to said town, and to render to said town annually, and as much oftener as said town may require, a true and faithful account of all their proceedings relative to said farm;" "subject however to these directions and restrictions:" that in case of strip or waste, or of misappropriating any part of the income, or of the selectmen's refusal or neglect to render an account to the town, then the two oldest persons in the nearest degree of kindred to the testator within the county might proceed to settle the matter by submission to arbi-

2 *

tration, and, if the selectmen should neglect for six months to pay to said kindred any sum awarded, " the said two of my said kindred shall forthwith take possession of my said farm; and the said farm shall descend thenceforward to them, in equal shares, to have and to hold the same to them and their heirs and assigns forever; and the term of said selectmen and of said town in said farm shall thenceforward and forever cease and expire." At the time of the execution of the will there was but one religious society in the town. *Held*, that this devise was not for the benefit of the Congregational minister or ministers in the town, but for the benefit of the inhabitants of the town in their parochial capacity, and, upon their subsequent legal organization as a separate corporation, in trust for the parish; that the selectmen took an estate in fee, and not a life estate upon condition; that the executory devise to the testator's next of kin was void as tending to create a perpetuity; that the legislature might provide by law for the election of new trustees by the parish; and that a sale by such trustees, under license granted by this court, pursuant to *St.* 1846, *c.* 244, passed a good title as against all parties.

WRITS OF ENTRY to recover parts of a farm in Topsfield, of which Daniel Bixby died seised in 1825. The first demandant was an heir at law of said Daniel; and the second, an heir at law of Ruth Bixby, his widow and residuary legatee. By his will, made in 1811, he devised the farm in question to his said widow for life, and, after her, to his nephew Daniel Towne for life, and then as follows:

" I give and devise to the selectmen of the town of Topsfield aforesaid, and their successors in office forever, all my farm, situate in Topsfield aforesaid and in Boxford in said county, after payment of the debts, charges and legacies hereinbefore mentioned, and after the terms of my said wife and nephew therein, as hereinbefore expressed, shall have fully expired and run out; to have and to hold the same to the said selectmen and their successors, on the special trust and confidence here following, that is to say: that the said selectmen and their successors shall from time to time lease out the said farm for a term not more than seven years, nor less than three years, extraordinaries excepted; and shall yearly and every year appropriate and pay all the rents, incomes and profits of the said farm for the support of a gospel minister or ministers in said town of Topsfield, of the Congregational denomination; the said selectmen to be always accountable to said town of Topsfield, and to render to said town annually, and as much oftener as said town may require, a true and faithful account of all their proceedings relative to said farm; the said farm to be called and known by the name of the

Donation Farm for the support of the gospel; subject however to the directions and restrictions hereinafter mentioned."

" My will is, and I hereby further order and direct, that, after the said selectmen shall come into possession of my said farm, as hereinbefore provided, they shall be allowed to cut not exceeding six cords of wood in any one year; and it shall be the duty of those who may be in the nearest degree of kindred to me to see that the said selectmen at all times cause the buildings and fences on said farm to be kept in good repair, and that said farm be well managed for the purpose for which it is given. And if any strip and waste be made of said farm, or any part thereof, while under the care of said selectmen; or if any part of the rents, incomes and profits of said farm shall at any time be appropriated for any other purpose than that for which it is hereby given and intended; or if said selectmen shall refuse or neglect to render to said town of Topsfield a true and faithful account of their proceedings in the premises as hereinbefore required; then the two oldest persons in the nearest degree of kindred to me, living within the present limits of the said county of Essex, shall give notice to said selectmen; and after six months, if they still see cause, shall proceed to settle the matter in manner following: The said two of my kindred shall appoint one disinterested judicious freeholder, and the said selectmen shall appoint a second; and they two shall decide, or, in case of disagreement, they shall together appoint a third to join them; and the decision of the two persons so appointed, or of the three persons so appointed, or a majority of them, as to the damage sustained by such strip and waste, or bad management, shall be final; and the said selectmen shall pay to said two of my kindred such sum as the referees shall decide, within six months after such decision; or, on failure of such payment within that time, the said two of my said kindred shall forthwith take possession of my said farm; and the said farm shall descend thenceforward to them, the said two of my kindred in the nearest degree and living within the limits aforesaid, in equal shares; to have and to hold the same to them and their heirs and assigns forever; and the term of said selectmen and of said town in

said farm shall thenceforward and forever cease and expire. And if the said selectmen shall, for thirty days after due notice of the appointment of the first person by said two of my kindred as herein provided, refuse or neglect to appoint the second, as herein provided, the said two of my kindred may make known such refusal or neglect to the judge of probate for the time being for said county of Essex; and three disinterested judicious freeholders, appointed by said judge, shall in the same manner decide, and their decision shall be equally and in the same manner binding, as if the referees had been appointed in manner before provided."

Ruth Bixby entered on the premises after the testator's death, and occupied them until her own death in 1834; then Daniel Towne, the testator's nephew, entered and occupied till his decease in 1845, after which the selectmen of Topsfield entered, and in 1846 were appointed by the judge of probate trustees of the estate under the will, and leased it for seven years.

In 1800 and previously the inhabitants of the town of Topsfield acted as a parish, raising money for the support of a minister of the gospel, and instructors in piety, religion and morality, and (excepting those who legally separated themselves and joined other parishes or religious societies) continued to exercise all the functions of such a corporation until the 29th of March 1824, when the parties remaining connected with such parish were duly organized under *St.* 1823, *c.* 117, which enacted that "all the inhabitants of the town of Topsfield, with all the lands in said town, (except such inhabitants and such lands as do belong to some other parish or religious society, or are exempt by law from parish charges in said town of Topsfield,) be and they hereby are incorporated into a parish, by the name of the Congregational Parish in Topsfield, subject to all the duties and vested with all the rights and privileges to which parishes are by law entitled;" "and the said congregational parish shall be deemed and taken to be successors to the said town of Topsfield, as far as related to parochial proceedings, rights and privileges, and subject to all contracts of a parochial nature which may have been made by said town."

The new corporation retained the former minister, without any new installation, continued him in the occupation of the parsonage lands, and retained and used the church plate. The ecclesiastical affairs of the parish, both before and since this incorporation, have always been conducted according to the Congregational system of church government, and Orthodox or Calvinistic tenets have always been professed by the members. The testator was always a deacon in the old parish, and, so long as physically able, attended public worship at their meeting house. None of the ministers of the town living at the time of his death were living when these actions were commenced. The net income of the farm since Daniel Towne's death has been appropriated to the support of the minister of the Congregational Parish.

In 1847 that parish duly accepted the *St.* of 1847, *c.* 231, which provided for an election by them of trustees, " members of said parish, who, with their successors, shall thereafter be constituted a body corporate, by the name of the Trustees of the Bixby Donation Farm, for the support of a gospel minister or ministers in the town of Topsfield, of the Congregational denomination;" and " have the power to take and hold, and shall take and hold, all that farm and estate devised to the selectmen of the town of Topsfield by Daniel Bixby, subject to all the restrictions and trusts mentioned in said will; shall apply the incomes and profits thereof according to the directions in said will; and shall hold and administer said estate in all respects according to the terms, provisions and directions of said will, except that said trustees shall not be accountable to the said town, and shall not be required to make any reports of their doings to said town; but shall be accountable to said parish, and make all such reports to said parish annually or oftener, as by the terms of said will were required to be made to said town;" and " in all other particulars said trustees shall take the place of said selectmen, and shall perform and discharge all the duties and be subject to all the liabilities of the said selectmen, as provided for in and by said will."

Trustees were duly elected under this statute by the parish, and

appointed by the judge of probate, and accepted the trust and entered upon the premises, and in 1853 demised them for a term of three years, by a lease which provided that the lessee might cut not exceeding nine cords of pine wood from the farm yearly; and the lessee did cut nine cords of hard and soft wood yearly.

At November term 1855 of this court said trustees, upon their petition pursuant to a vote of the parish, were authorized to sell and convey the estate, and to invest the proceeds subject to the same trusts and uses as the original trust; and in May 1856 sold the estate and conveyed it by warranty deed to the tenant in these actions.

If on the foregoing facts the demandant in either action was entitled to recover, the tenant was to be defaulted. If the demandant in neither action was entitled to recover, judgment was to be for the tenant, unless it was competent for the demandants to show that from 1812 to 1830 there was another Congregational society in Topsfield beside the old town society; that from 1833 to 1836 there was another similar Congregational society; that the farm had not been managed according to the rules of good husbandry; that after the death of Daniel Towne the selectmen had allowed the farm to be held by a tenant at will for no fixed rent; and that the annual reports of the trustees had been made to the parish, and not to the town; in which event the case was to stand for trial.

*T. P. Pingree, Jr.*, for the demandants.

*S. H. Phillips,* (*W. G. Choate* with him,) for the tenant.

MERRICK, J. The premises demanded in these suits constitute the farm formerly owned by Daniel Bixby. By his will he devised the same, subject to the life estates of his wife and nephew, and also to certain specified directions and restrictions, to the selectmen of the town of Topsfield, on the special trust and confidence that they should yearly and every year appropriate and pay all the rents, income and profits of the farm for the support of a gospel minister or ministers in that town of the Congregational denomination. The demandant Wells is one of the heirs at law of the testator, and claims to be entitled in that capacity to maintain this action. He insists that the

devise to the selectmen of Topsfield was wholly inoperative and void, or that it was a devise to them of a life estate only, or that it was a devise upon certain conditions which have not been kept, and that by the breach thereof the devisees have forfeited their estate, and that the title thereto has consequently become vested in the heirs at law of the testator. The demandant Prince contends that, by force of the residuary clause in the will, the estate was devised to Ruth Bixby, under whom, as one of her heirs at law, he endeavors to establish a title to it in himself.

There is no difficulty in ascertaining from the language and provisions of the will the meaning of the testator, or what was his intent and purpose in the devise to the selectmen of Topsfield. He obviously intended to afford permanent assistance to the inhabitants of that town in the support of a religious teacher of the Congregational denomination. The devise was in substance a gift to them ; they were the *cestuis que trust*, and were to enjoy exclusively the benefits and advantages of the estate devised, for whose sole use and advantage it was taken and held by the devisees. It was thus given to the inhabitants of the town, and not to those who for the time being were there the minister or ministers of the gospel. *Emerson* v. *Wiley*, 10 Pick. 317. This is apparent from the provision that the selectmen are always to be accountable to the town for their conduct and proceedings in their management of the farm, and are to render annually to the town, and as much oftener as the town shall require it to be done, a true and faithful account of all matters pertaining to the trust estate. And that it was the intention of the testator that the real and substantial interest in the estate devised should be in the town is apparent also from his express declaration in another part of the will, that as soon as the two persons in the nearest degree of kindred to him should take possession of the estate under the executory devise to them, the term of the town, as well as of the selectmen, should thenceforth and forever cease and expire.

But the devise was to the selectmen to hold the estate devised to them in trust for the town in its parochial capacity.

At the time of the execution of the will there was but one relig-ious society in the town of Topsfield, and according to the well settled principles of law pertaining to those matters, the town was then obliged to maintain and support public worship and perform all parish duties; and was in all respects in relation to the support and maintenance of public worship to be considered a parish until the formation of a new one within its territorial limits. When the Congregational Parish in Topsfield was or-ganized on the 29th of March 1824 under the *St.* of 1823, *c.* 117, it succeeded to all the parochial property, rights, duties, and lia bilities of the town. *Dillingham* v. *Snow,* 5 Mass. 547. *First Parish in Brunswick* v. *Dunning,* 7 Mass. 445. *Austin* v. *Thomas,* 14 Mass. 333. *First Parish in Shrewsbury* v. *Smith,* 14 Pick. 297. *Ludlow* v. *Sikes,* 19 Pick. 317. *Lakin* v. *Ames,* 10 Cush. 198. The trustees thenceforward held the devised estate in trust for the newly incorporated parish.

The devise to the selectmen of the town of Topsfield was a good and sufficient description of the persons who were to take the estate as devisees. It is clear that any words which are suf-ficient to denote the persons meant by the testator, and to dis-tinguish them from all others, will secure to them the property or estate which may be given them in a will. 6 Cruise Dig. tit. 38, *c.* 10, § 27 & *seq.*

But it is objected by the demandants that if the individuals designated as the selectmen of Topsfield could take the estate devised to them, they took it only for life and not in fee, because there were no words of inheritance annexed to the gift. The devise is, in terms, to the selectmen of the town of Topsfield and their successors in office forever. It is certainly true, as contended by the demandants, that the selectmen of a town do not in any sense constitute a corporation, and that a gift or conveyance, in general terms, to them and their successors in office, whether by deed or devise, does not create an estate in fee, but for life only. But this devise under the will of Bixby to the selectmen of Topsfield was not a gift to them to their own use, but in trust for others. And it is an established rule of law that where an estate is granted to one or more persons in trust, with

out words of limitation to heirs and assigns, and the trust is of such a nature that, to support and carry it into effect, a legal estate in the trustee, which will or by possibility may exceed the life or lives of the trustee or trustees, is required, the law will construe the estate to be in fee. *Attorney General* v *Federal Street Meeting-house,* 3 Gray, 48. *Cleaveland* v. *Hallett,* 6 Cush. 406.

Applying this principle to the devise of the farm to the selectmen of Topsfield, when considered in reference to all the provisions in the will concerning it, there can be no doubt but that the estate in fee simple vested in the trustees. All the provisions in the will show that it was the intention of the testator that the devised estate should be permanently appropriated to the sole and exclusive use of the *cestuis que trust.* The farm is given to the selectmen and to their successors in office forever. They are yearly and every year to appropriate and pay over the rents, income and profits of it for the support of a gospel minister; and they are annually, forever, without any limitation of time, to render just and faithful accounts of their proceedings in relation to the estate to a corporation which has perfect existence. And in order to secure to the *cestuis que trust,* who are the objects of his bounty, the uninterrupted and perpetual enjoyment of the estate devised, and of all the income and profit which may be derived from it, the testator endeavors to make certain the fidelity of the trustees by exposing them to prescribed penalties if they should fail to perform their duty according to the directions and instructions particularly specified in his will.

To the same end and for the same purpose also are all its provisions in relation to the executory devise over to the two persons nearest to him in kindred who shall be living in the county of Essex when his directions shall cease to be observed. It is true that this executory devise is wholly ineffectual and inoperative, because the estate will not necessarily come to vest in the executory devisees within the time prescribed as the rule to prevent the creation of perpetuities; for it would be impossible of course to foresee, when the estate was taken by the trustees, within what time any of these contingencies would

occur, upon the happening of which the executory devise was to take effect. It might not happen until after many generations should have passed away. 6 Cruise Dig. tit. 38, *c.* 18, §§ 20, 21. *Brattle Square Church* v. *Grant,* 3 Gray, 142. But this provision, like everything else contained in the will, evinces clearly the intention of the testator to make the devise in favor of the *cestuis que trust* a perpetual benefit, and shows that an estate which may, and in the contingencies provided for necessarily must, exceed the life or lives of any designated trustee or trustees, is indispensable to carry the trust fully into effect. The devise therefore in the will of Bixby to the selectmen of Topsfield gave to them the estate in fee simple.

It is a mistake to suppose that the estate thus devised was given, as the demandants contend, upon any condition, the nonperformance of which might cause a forfeiture of the estate of the devisee. No such condition was annexed, or attempted to be annexed, to the estate by the testator. A condition, or the benefit of a condition, can be reserved only to the donee, feoffee, devisee or his heirs. 2 Cruise Dig. tit. 13, *c.* 1, § 15. *Hayden* v. *Stoughton,* 5 Pick. 528. The testator, so far from reserving or attempting to reserve the benefit of any condition to himself or to his heirs at law, makes a special and particular provision for the express purpose of preventing the estate from returning to or becoming vested generally in his heirs. That is to say, he prescribes upon the occurrence of certain contingencies that it shall be taken possession of by the two persons nearest in kindred to him who shall then happen to be residents in the county of Essex, and shall thenceforward descend to them and their heirs as absolute owners in equal shares. As it thus appears that the whole estate was devised ; that there was no condition annexed to it; that the executory devise over was inoperative and void ; and that the full execution of the trust created by the will required an estate exceeding in duration the lives of the trustees named ; the conclusion is inevitable, that no forfeiture has been incurred, but that the selectmen of the town of Topsfield took an estate in fee simple in the farm devised to them.

From these considerations it appears that neither of the de-

mandants ever had or acquired any title whatever to the demanded premises; and it would therefore seem to be quite unnecessary to inquire whether the proceedings under which the tenant claims to be the lawful owner thereof were regular and correct. It is sufficient to defeat these actions, that he is in possession claiming title under a deed of conveyance, and that the demandants show no right to the estate in themselves. But we may add very briefly that we perceive no want of lawful authority in the grantors to make the conveyance. By the *St.* of 1847, *c.* 231, a new mode of appointing trustees is provided for. That mode has been strictly pursued, and it is not suggested that the provisions upon this subject have in any particular been disregarded. In all other respects the statute leaves the rights of the parties in interest just as they existed under the will. After the new trustees were appointed, they, being by virtue of the provisions of the statute the owners in fee of the demanded estate, but in trust under the will of Bixby for the then existing Congregational Parish in Topsfield, did, at the request of that parish and in pursuance of its votes in relation thereto, apply to this court for license to make sale of the real estate, and to hold the proceeds of such sale in lieu thereof and upon the same trust as they held said estate. Due proceedings were had upon that application, and the license prayed for was granted. This was a judicial decree upon a subject within the proper jurisdiction of the court; and therefore it is to be regarded as an adjudication conclusive upon all parties. *St.* 1846, *c.* 242. The trustees, deriving their right under the license thus given them, and acting with the express consent and in conformity to the expressed wish of the *cestuis que trust,* sold and conveyed the estate to the tenant, and he thereby acquired a complete and perfect title to it.

Pursuant to the agreement of the parties, judgment must be entered for the tenant, as it is apparent from the views already taken that the further facts which the demandants offered to prove are immaterial to the issue, and, if established, could not in any degree affect its determination.

*Judgment for the tenant.*