ORLEANS,<br>
March,<br>
1833.<br>
<br>
Thompson<br>
vs.<br>
Arms.

---

STEPHEN STONE *vs.* CHARLES SEAVER.

ORLEANS,<br>
March,<br>
1833.

A writ of *Audita Querela* is not within the eleventh section of the Statute of Limitations, which requires writs of error, &c. to be brought within a year from the rendition of the judgement.

It is not necessary in a writ of *Audita Querela* to allege that the act complained of, was done fraudulently and deceitfully, especially if the acts complained of do shew fraud and deceit in the party.

Where a plaintiff procures a deputized person to make a return that he served a writ by leaving a copy with the defendant, when he knew that no such copy was left, and that no notice was given to the defendant, and takes a judgement thereon, such judgement will be declared null on a writ of *Audita Querela*, and the party against whom it was rendered may recover all damages which he has sustained thereby.

Such *Audita Querela* may be maintained, although no execution has issued on the judgement.

This was an *Audita Querela* to set aside a judgement of the defendant against the plaintiff, rendered by a Justice of the Peace, on the 14th day of January, A. D. 1829, on the

ORLEANS,
March,
1833.

Stone
vs.
Seaver.

ground of fraud in obtaining said judgement. The attachment in the original suit was served by an authorized person, and the complaint of the plaintiff is, that the defendant procured said authorized person to indorse on the back of said writ that he had served the same on the plaintiff, by attaching as his property, ten tons of hay; and on the same day, left a true and attested copy of said writ, with a list of the property endorsed thereon, with the plaintiff; when the defendant well knew that said authorized person had left no such copy with the plaintiff, and that the plaintiff had no notice of said suit against him. The writ being returned to the Justice, a judgement by default was rendered. The declaration contained no direct allegation of fraud and deceit in obtaining the judgement complained of.

The defendant plead in bar, that the *Audita Querela* was not commenced and served within one year next after the rendition of the judgement sought to be reversed, nor within one year after the judicial proceedings had.

To this plea the plaintiff demurred.—And joinder by defendant.

*Young & Hill*, for plaintiff.——The judiciary act, passed March 2d, 1797—Rev. Laws, p. 61, Sec. 12—directs, " that on *any judgement* rendered by a Justice of the Peace, either by confession, or otherwise, the writ of *Audita Querela* shall be allowed," &c.

The Justice Act, passed March 4th, 1797—Rev. Laws, p. 126, Sec. 7—directs, " that no judgement, sentence or decree, had or rendered by any justice of the Peace within this State, on the merits of any cause or action, within the jurisdiction of a Justice, shall be removed by a *writ of error, certiorari,* or any other process whatever ; or shall be re-examined, or reversed by the Supreme Court of Judicature, any law, usage or custom to the contrary notwithstanding."

The Limitation Act, on which the defendant relies, was passed November 6th, 1797—Rev. Laws, p. 291, Sec. 11. That act applies expressly and solely to matters of error and defect, where the proper remedy would be by *writ of error,* or some suit in the nature of that writ; and has no

more effect in limiting the operation of a writ of *Audita Querela*, than the *preceding* Justice Act has in doing away entirely its operation upon the judgements and doings of a Justice of the Peace; for the plain reason, that no suit in the nature of a writ of error can apply *there*, being taken away by statute previous to the passing of the Limitation Act. This act, therefore, must necessarily be confined in its operation to judgements and doings of the County Court, and such other Courts, whose errors and defects might have been remedied at the passing of this act, and *still* might be remedied, by writs of error or suits in the nature of that writ. It can only apply to writs or suits for the correction of errors or defects in a judgement either *in law* or *in fact*, committed by the Court; and cannot apply to a case coming before the County Court as by original writ, founded solely upon the fraud and misconduct of the recovering party. The Statute of Limitations does not even mention this writ, or this kind of remedy; nor could this kind of wrong or injury, or the mode of redressing it, ever have been contemplated by that statute.—Chip. Rep. p. 387.— 1 Vt. Rep. p. 433.—2 Vt. Rep. p. 407.—1 Aik. Rep. p. 107–321–359–363.

We contend that the plaintiff is entitled to relief; and without the aid of an *Audita Querela*, the arm of the law would be quite too short to relieve against this most daring and obnoxious of all practices under color of legal proceedings. This mode of obtaining relief was the only one extant. The record shows a judgement which remains good for eight years from its rendition, without this remedy. And if a judgement be obtained, however gross the fraud, or ingenious the stealth, according to the doctrine contended for by the defendant, after a lapse of one year from the date of the record thereof, it would be a valid judgement to all intents and purposes, even against the remedy here sought. If so, it might be again sued and enforced without a possibility of relief.

A defence in a suit on such judgement must be of no avail: that is not the way of avoiding a recorded judgement. In such case, the corrupt party would always keep his judgement a secret till after the year had expired.

ORLEANS,
*March,*
1833.

Stone
*vs.*
Seaver.

ORLEANS,
March,
1833.

Stone
vs.
Seaver.

plete relief from impending evils which appear to have the sanction of judicial proceedings. Thus a judgement wrongfully obtained is to be relieved against as expressed in the case *Weeks* vs. *Lawrence*, 1 Vt. Rep. p. 433.

So it operates to relieve against an execution already levied, though wrongfully, as in the case *Hurlbut* vs. *Mayo*, Chip. Rep. 387.

Hence the objects of *Audita Querela* seem to be broad in their beneficial purposes—always intended to operate upon the wrong of the party against whom it issues; but still to relieve against some matter of record, by which the party does or may attempt to avail himself. And it cannot be necessary that he shall be in the very act of oppressing his adversary; but that he has it in his power, unless his hands be staid.

*J. Fletcher*, for defendant.—The writ of *Audita Querela* was prayed out on the 12th day of April, 1831, and service made on the defendant on the 30th day of said April, being more than a year next after the rendition of final judgement by Justice Skinner.

The only question raised in the case is, whether an *Audita Querela* must be prayed out and served within one year next after final judgement sought to be reversed by the same.

The statute requires the action to be brought in one year.—Stat. 291.

The judgement before Skinner is sought to be reversed by this writ for error or defect.

This is a suit for that purpose. The case is within the provisions of the act.

The opinion of the Court was pronounced by

WILLIAMS, J.—This is a writ of *audita querela* to which the defendant pleads the Statue of Limitations in bar.— The Statute is "that no judgement or proceedings in Courts of Justice in any real or personal action shall be

It is considered that the writ of *Audita Querela* is in the nature of a bill in equity, for the purpose of obtaining com-

ORLEANS,
March,
1833,

Stone
vs.
Seaver.

reversed or avoided for any error or defect therein unless the writ of error or suit for reversing such judgement or proceedings in course of justice be commenced and duly served on the defendant, or defendants in error, within one year next after the rendition of the judgement, or within one year next after such error or defect shall have intervened." To this plea the plaintiff has demurred:

The Courts in this State have considered the writ of *audita querela* as a remedy applicable to cases like the one set forth. In the case of *Marion* vs. *Wilkins*, 1 Aik. 107, and in the case of *Dodge* vs. *Hubbel*, 1 Vt. Rep. 491, it was recognized as a principle in our system of jurisprudence, that an *audita querela* is a proper remedy when a judgement of a Justice of the Peace has been obtained against a party, who has had no suitable notice to appear and defend against the same. It is emphatically the proper remedy when a party has been precluded from having notice by the misconduct of the party who obtained the judgement. To maintain this writ, it is not necessary that the party who brings it, should be actually in execution. It is sufficient if he is liable to an execution on a judgement obtained against him without notice. He may sustain his writ of *audita querela quia timet*.

The object is not always to annul or vacate a judgement. It frequently supposes the judgement to be regular and is brought to set aside the execution. The object is sometimes for the recovery of damages alone. Annulling the judgement is rather the incidental than the direct object of the writ.

It is not a writ of error, or in the nature of a writ of error or *certiorari*, to reverse a judgement. The judgement therein is never to affirm, though it sometimes is to vacate a judgement. If it were a writ of error or in the nature of a writ of error, it would not be brought to examine a judgement rendered by a Justice of the Peace, as the judgement of a Justice of the Peace, can only be reversed on appeal; and are not subject to removal, or to be re-examined or reviewed in the language of the Statute " by writ of error *certiorari* or any other process whatever, (sec. 7 Justice act) whereas it is expressly admitted by the 12th Section of the judiciary act, that a writ of *audita querela*

ORLEANS,
March,
1833.

Stone
vs.
Seaver.

may be brought on a judgement rendered by a Justice of the Peace.

It differs from a writ of error or *certiorari* in this, an *audita querela* is founded upon facts not appearing on the record and not before the Court who rendered the judgement. These facts must be set forth. They may be traversed or their sufficiency denied by a demurrer. It is in the nature of an original suit, or as it is sometimes said, in the nature of a bill in equity. A writ of error is founded upon the record, brings it up for the examination of the record and correction of any errors intervening therein. Unless it be for some error in fact, as infamy, &c., no issue of fact can be joined thereon.

A writ of *certiorari* brings the record and in some cases the evidence upon which the adjudication was had by the inferior tribunal, and when they are certified, the Supreme Tribunal determine upon them whether the decision of the inferior was correct, and either affirm or quash the proceedings, but no facts are to be controverted and tried by jury.

From this view of the nature of a writ of *audita querela*, it is obvious that it does not, and cannot come within the section of the Statute of Limitations before mentioned.

That Section (Sec. 11 Limitation Act) appears designed to limit the time within which a writ of error, or writ in the nature of a writ of error shall be brought for the purpose of reversing a judgement. It speaks of the defendant or defendants in error, also, of errors or defect in the judgement; and although the term made use of is more general, to wit, "the writ of error or suit for reversing the judgement" yet we think that by the term suit, must be understood such a suit as brings the record in controversy, and has directly for its object the reversing a judgement for some error or defect therein, and is in the nature of a writ of error. In this view it would probably embrace the writ of *certiorari*.

It is very clear that it would not be extended to all writs of *audita querela* as the cause for which the writ may be brought may not arise in many cases under more than a year from the rendition of the judgement, as in the case of payment or discharge of one of two joint debtors from

ORLEANS,
March,
1833.

Stone
vs.
Seaver.

commitment on an execution, and an *alias* execution issuing more than a year thereafter.

Moreover as an erroneous judgement supposes that the party had regular notice of the process on which the judgement was rendered, he knows whether error has intervened. In those proceedings which are subject to be reversed or quashed on *certiorari*, the party is supposed to have notice and may well be limited to bring his writ to reverse the judgement within a year.

But in a judgement like the one here complained of, the party is supposed to have no notice. He may neither know of the judgement or the manner in which it is procured until years after it was rendered. To limit him to a year within which he must bring his suit would in effect deny the remedy altogether.

As the section of this Statute does not name a writ of *audita querela*, as it could not with propriety be extended without doing violence to the spirit of the law giving the remedy, as well as the Statute of Limitations, we are of opinion that tne plea does not interpose any bar to the plaintiff's writ.

This will lead us to examine the complaint, and inquire whether there are those defects in it which have been urged. It is said there is no allegation of fraud and deceit in the defendant, and we are referred to the case of *Lovejoy* vs. *Webber*, 10 Mass. 101, where it is said that such an allegation is essential. The book is not in town so that we can examine the case. If it decides that the words *fraudulently* and *deceitfully*, must be made use of in a writ, without which it would be bad, I should hesitate before I could subscribe to the authority. If it decides that those facts must be set forth which show fraud and deceit in the party complained of, this declaration is not liable to objection on that account.

Though somewhat loosely drawn and though it does not particularly specify the manner in which the writ was served, yet it does say that the defendant caused a return to be made by the person deputed to serve the writ, that a copy was left with him when he (Seaver) knew no such copy was left, and that complainant had no notice of the suit. This is a sufficient allegation of fraud and deceit in

Stone
vs.
Seaver.

the defendant, to satisfy that requirement in the declaration if it be necessary.

If this return had been made by a Sheriff or a regular officer, it might be questioned whether such an allegation would be received against his return. Whether his return would not be conclusive as to that part, not to be controverted in a writ of *audita querela* and the party left to take his remedy for a false return.

But however this may be as to returns made by the regular officers, no such effect can be given to a return of service made by a person deputed at the risque and request of the plaintiff in a suit. The acts and doings of such a person, if done at the request and by the procurement of a plaintiff may be treated as the act of the plaintiff himself and are not entitled to that confidence which is reposed in the doings of a Sheriff or Constable.

We do not discover that the declaration is insufficient or that it will not stand the test of a demurrer. The judgement of the Court is that the plea in bar is insufficient, and the judgement rendered as purported to have been rendered by John Skinner, Esq. a Justice of the Peace in favor of the defendant, Seaver, against the complainant, Stone, is hereby annulled, and the plaintiff recover his damages and costs.