## JAMES R. HILL & CO. v. C. C. WARREN.

*Audita Querela. One Copy for each Defendant. Recognizance must be double the Judgment. Parol Evidence. Justice of Peace.*

1. In an action against two or more non-residents one copy must be left by the officer for each of the defendants, at the place directed by the statute; and, if only one is left, the judgment may be set aside upon *audita querela.*
2. The return itself must show legal service; and, as the methods provided by statute are not alternative, but successive, the latter can be resorted to only from ne cessity; and, as the court will not presume the necessity, the return must show it,—as that the defendant had no known agent, &c.
3. The bond by way of recognizance for review must be double the amount of the judgment, *including costs;* one double the amount of the *damages*, is too small; and a judgment with such recognizance may be annulled by *audita querela.* This case arose before the R. L. took effect.
4. When there are two recognizances, one taken before and the other after, the execution had been issued, only the first one, though defective, will be considered by the court; and parol evidence is admissible to prove, that, after the sale on the execution, the defendant procured the magistrate to take and certify as a part of the record, a new and enlarged recognizance. The recognizance must be taken before execution.
5. Damages are recoverable in *audita querela.*
6. *Paddleford* v. *Bancroft*, 22 Vt. 529 and *Folsom* v. *Conner*, 49 Vt. 4, followed; *Phelps* v. *Perry*, 4 Vt. 488, distinguished; *Eastman & Paige* v. *Waterman*, 26 Vt. 494, criticised.
7. R. L., s. 1407, recognizance for writ of review—and R. L., s. 881, service on non-residents—construed.

HEARD by the court at the March Term, 1881, Washington County, REDFIELD, J., presiding. *Audita querela*, to vacate the judgment of a justice of the peace.

Plaintiffs are a firm of partners, residing and doing business of working leather, at Concord, N. H. The defendant is a tanner, residing and doing business at Waterbury, in this State. The defendant sold to the plaintiffs nineteen sides of harness leather, at an agreed price of $8 per side, sent by express without inspection. The plaintiffs worked up five of said sides, when they discovered, as they claimed, the leather was defective in quality, and returned the fourteen sides that remained intact to the defendant,

with notice that they declined to accept them on the contract; and also sent by mail a bank check of $40 to pay for the five sides that had been used by plaintiffs. The defendant sued the plaintiffs and attached the fourteen sides of leather in the R. R. depot at Waterbury.

The officer in his return of said attachment returned that he attached said leather as the property of J. R. Hill, G. H. Emery and Josiah D. Dwight, and left a copy with — Jackman, *freight agent*, where he attached the property, for the defendant. He left but *one* copy; and there was no evidence of what relation Jackman held to the R. R. corporation or its managers except the return. The plaintiffs had no notice of this suit until after final judgment therein. The plaintiffs claimed that there was no proof, nor presumption, that Jackman was a proper agent of the railroad managers with whom to leave a copy of a writ of attachment.

As to recognizance, the court found that the defendant produced in court a certified copy of judgment in the case with recognizance attached for double the amount of the judgment-damages and cost.

The plaintiffs produced in court the magistrate by whom the judgment was rendered, with the original files and record; and offered to show by parol that on the 14th of April, 1880, after the sale of the leather on the execution, the defendant procured the magistrate to take, and certify as a part of the record, a new and enlarged recognizance. The defendant objected to the testimony, but the court received the testimony subject to defendant's exceptions.

The original files show that the defendant with surety, at the time judgment was rendered, recognized for review in the sum of $304, double the amount of damages in the judgment. On the 14th day of April, 1880, after the sale of the leather on the execution, the recognizance was *rewritten*, and the amount stated in it is $311.96; but the first recognizance for $304 still remains attached to the files in the case. All of which appears on the face of the papers, and the time when the recognizance was amended.

The defendant then proposed to prove by parol, to which plain-

tiff excepted, that defendant's attorney wrote the recognizance, and when he came to the *sum* to be inserted, he inquired of the magistrate (who held in his hands the files in the case) what was the amount of the *judgment*, and the magistrate replied $152, and the attorney stated that amount in the minutes of the recognizance. The court found that the defendant and his counsel, Mr. Clough, when they recognized, stated to the magistrate that they recognized for review in double the amount of the *judgment*. This was at the time judgment was rendered.

It was proved that the defendant returned the bank draft (received on the 7th) on the 9th day of February, 1880, which was the day said judgment was rendered, without any intimation that a suit had been instituted. The court were of the opinion that the defendant purposely abstained from giving intimation to the plaintiffs in this correspondence, that they had a suit against the plaintiffs.

Judgment that the original judgment be set aside and annulled, with damages $112 (the value of the leather sold on the execution) and costs.

*C. F. Clough* and *J. A. Wing*, for the defendant.

One copy was sufficient. 1 Vt. 148. But this question cannot be tried by *audita querela*. 26 Vt. 501, 494. The records duly certified are conclusive. 26 Vt. 494; 52 Vt. 343. When the parties appeared and recognized they did all that was necessary. *Audita* will not lie for the neglect of the justice. 42 Vt. 165; 27 Vt. 214. The justice had a right to amend his record. 1 Vt. 433; 1 Aik. 321, 363; 18 Vt. 598; 13 Vt. 14; 6 Vt. 541; Freeman on Judg., ss. 53 a, 38, 56, 71.

*E. F. Palmer*, for the plaintiffs.

The opinion of the court was delivered by

VEAZEY, J. This is *audita querela* to set aside a judgment of a justice of the peace. The defendants in that suit (plaintiffs here) were non-residents and had no notice. The plaintiffs now claim there was no legal service of the writ in the justice

suit; and no such recognizance for review as the statute requires in case of a judgment by default without notice. The defendants were described in the writ as being residents of Concord, New Hampshire. The return of the officer was as follows:

" STATE OF VERMONT, ) At Waterbury, in said County, this 30th Washington Co. ss. ) day of January, 1880, I then served this writ on the within named defendants by attaching the property of J. R. Hill, G. H. Emery and Josiah G. Dwight, 14 sides of harness leather, and on the same day I left with George Jackman, freight agent, where I attached the property, for the defendants, a true and attested copy of the original writ with my return hereon thereon endorsed."

The statute under which this service was made reads as follows:

" When the goods or chattels of a person are attached at the suit of another, a copy of the attachment and a list of the articles attached, attested by the officer serving the same, shall be delivered to the party whose goods or chattels are so attached, or left at the house of his then usual abode, as directed in the service of summons, and if such person is not an inhabitant of the State such copy shall be left with his known agent or attorney, and for want thereof at the place where such goods or chattels were attached." R. L. sec. 881.

I. This statute provides a method of service against non-residents if they have property in this State; but it is not available unless strictly followed; and its construction should be such, within the proper scope of construction, as will secure fair dealing and be most likely to give notice of the proceeding. If the defendants had been residents or within the precinct at the time, they would each have been entitled to a copy of the attachment and list of the articles attached. *Smilie* v. *Runnels et al.*, 1 Vt. 148. We think the reason is quite as strong, where service cannot be made upon the defendants in person, for leaving as many copies where the goods are attached. The reason for notice in all cases is equal; and the statute imports no design that the defendants shall not have notice in any case. Its object was to provide for the emergency of the defendants being out of the jurisdiction, but with guards to fairly protect them. We think it is

plain that if the defendants had had a known agent in this State, they would have each been entitled to have had a copy left with him. It would be very strange that the legislature should intentionally provide that one copy served upon an agent of several absent defendants should be sufficient, when the law would have required a copy served on each if they had been in the jurisdiction. Yet the statute plainly imports that there shall be as many copies left where the goods are attached in case there is no known agent, as would be required to be left with an agent. The language is : " and if such person is not an inhabitant of the State, such copy shall be left with his known agent or attorney, and for want thereof, at the place where such goods or chattels were attached." This construction and view is strongly supported by the case of *Washburn* v. *N. Y. & Vt. M. Co.*, 41 Vt. 50, which was an attachment of real estate under section 874, R. L., by lodging a copy in the town clerk's office, and where it was held that an additional copy must be left for the absent defendant.

II. The return shows no reason for serving the writ in the method adopted. It does not show that the defendants were not within the precinct, nor that they had no known agent or attorney in the State. The methods of service provided are not alternative, but successive, the latter being proper only from necessity in default of ability to adopt the former. The court cannot presume the necessity ; but the return must show it in order to render the service valid.

III. Under that provision for leaving a copy where the goods were attached it might be proper to leave the copy with an individual ; but the propriety of it must be shown in the return. As before stated this statute is entitled to a strict construction. It provides for a proceeding *in invitum*. This return does not show in what relation Jackman stood to the property attached, or why a copy should be left with him. So far as appears from the return, which could be the only guide of the court in deciding upon the validity of the service, there was no more propriety in leaving a copy with Jackman than there would have been in leaving

it with any person who happened to be there near the property at the time of the attachment. It would hardly be claimed that the legislature intended that such a service should be sufficient, or that a construction should be adopted that would make fraud quite so easy.

We do not say that the validity of the judgment until properly attacked was affected by the defective attachment and service ; but being now attacked by this proceeding, the first one available to these plaintiffs, we say, adopting the language of BARRETT, J., in *Folsom* v. *Conner*, 49 Vt. 4, that the return showed : " no such service was made by attachment and the leaving of copy as is required by the statute, in order to put the suit on foot so as to place these plaintiffs in any subjection to the proceeding in any stage or event of it. This would be conclusive in behalf of the plaintiffs upon this complaint." 2 Vt. 407 ; 23 Vt. 573 ; 27 Vt. 533 ; 5 Vt. 549 ; 49 Vt. 98.

IV. Was there a sufficient recognizance for review ? The bond of recognizance was taken before execution for double the amount of the damages recovered, without including the costs. The statute applicable to that case required it to be double the amount of the *judgment*, which would include the costs. Gen. Sts. c. 31, s. 52. In the Revised Laws, section 1407, this section was consolidated with section 49, c. 33, Gen. Sts., which was the section applicable to defaults without notice in the Supreme and County Court. The language of the two sections as they stood in the General Statutes, was not the same in the provision pertaining to the amount of the bond. The case of *Phelps* v. *Parks*, 4 Vt. 488, and referred to in *Perry* v. *Whipple*, 38 Vt. 278, had reference to a bond in the County Court.

In the trial of this suit parol evidence was introduced by both parties, subject to objection and exception, for the purpose of showing the facts upon which each relied independent of the justice record. The original files of the justice, which appear to have been put in evidence without objection, show that the recognizance as taken was too small. No proceeding was ever taken before execution to correct that error as it appeared on the orig-

inal files, where the recognizance was fully set out in due form. But after the execution and sale it was *retaken* and *re-written* the same as before, except the figures were made larger, and it was this last recognizance which the justice inserted in his record, which he certified and a copy of which was produced by the defendant on this trial below.

The defendant now claims, *first*, that the certified copy of the record is conclusive between the parties in this suit; *second*, if not conclusive, then the change in the recognizance was a mere correction of a mistake in making the original entry, which correction the justice had a right to make.

The arguments in this case and in other cases recently heard before this court, indicate that lawyers are in some confusion and doubt as to how the reported cases have left the question as to the conclusive character of a justice record in *audita* and other forms of action. In this case we have only to deal with the question in an *audita querela*.

It would seem that the remarks of Judge BARRETT, speaking for the court in the late case of *Folsom* v. *Conner*, 49 Vt. 4, and the decision of that case ought to have settled this question. The learned judge there says: " As this writ is brought for the purpose of attacking and vacating said judgment because the acts done in procuring it did not render this plaintiff amenable to the justice's court, nor affect him by the proceedings and judgment, the record of that court does not conclude him against showing what and all that took place tending to render such proceedings and judgment invalid and ineffectual against the subject of it. . . . . The object of this proceeding is to question, and invalidate, and annul the record."

Notwithstanding this holding and the logic of it, apparent from the fact that the proceeding is brought by a party to the suit directly against the judgment on account of the wrongful act of the other party in procuring a judgment to which he was in fact not entitled, and which would appear when the truth was shown, yet the case of *Eastman & Paige* v. *Waterman*, 26 Vt. 494, is cited in nearly every term of this court as authority for a contrary doctrine.

. The law, based on sound reason and abundant authority there cited, is concisely stated by REDFIELD, J., in *Paddleford* v. *Bancroft et al.*, 22 Vt. 529. He says : " When *audita querela* is brought, alleging the fraudulent misconduct of the party in obtaining a judgment, the judgment itself cannot be regarded as an estoppel upon the inquiry. If so, the remedy would in most cases be wholly unavailing. The conclusiveness of a judgment only extends to *collateral* attacks. When process is brought *directly* upon the judgment," (stating several methods open for this purpose,) " the whole subject is *necessarily* open to inquiry, as a mere matter *in pais*."

If the announcement of the law by Judge ISHAM in *Eastman & Paige* v. *Waterman*, *supra*, is in conflict with the law as enunciated by Judge REDFIELD before, and Judge BARRETT afterwards, in the cases above quoted, and to be found in numerous other cases, then it must yield to what we think is the sounder and better-settled rule. It is worthy of notice that Judge ISHAM refers to the case of *Paddleford* v. *Bancroft*, and adopts the rule there stated, but says the case he was dealing with does not fall within it. It is somewhat difficult to see from the report of the case why it did not, or to see when an *audita* would not come within the rules as he lays it down, and as taken from the case in the 22d, when it is brought to vacate a judgment, resting as it must, in order to be a proper remedy, upon the misconduct of the recovering party.

It will be further observed upon examination of the cases cited by Judge ISHAM, that not a Vermont case, with one exception, was a case of *audita querela ;* and that exception was *Pike* v. *Hill*, 15 Vt. 183, where the opinion was given by Judge REDFIELD, and is explained by him in *Paddleford* v. *Bancroft*, and where the record of the justice showed the defect complained of, and the party who obtained the judgment offered to show that the record was false in that particular, for the purpose of sustaining the judgment, and the court held that the party must be bound by the record as it stood. In the opinion in *Paddleford* v. *Bancroft*, Judge REDFIELD, referring to that case, said : " This is no doubt true in all cases. It involves an absurdity, a solecism indeed, to

*sustain* a judgment, or record, by showing its *falsity*. The sufficiency of all records is to be determined upon inspection; and if not sufficient upon their face, they cannot be eked out by parol evidence. But this question is wholly distinct from that of the conclusiveness of a judgment, when process is brought *directly* upon it." The same and no more on this point was held in *Hawley* v. *Mead*, 52 Vt. 343.

V. Under the rule here adopted, the evidence offered by the plaintiffs to show that after the sale of the leather on the execution the defendant procured the magistrate to take and certify as a part of the record a new and enlarged recognizance, was properly admitted.

VI. The remaining question relates to the alteration of the recognizance. Reasons apparent and which have been stated in previous cases, occur where strict formality should not be required in justice's records. *McGregor* v. *Balch*, 17 Vt. 568. But the question here is not one of form. The form of the first recognizance is just like the last one, and is full and complete. The amount was not as great as the law required. The recognizance must be taken before execution. Could the amount be changed, upon the facts found, after execution? The court found that the defendant and his counsel, when they recognized, stated to the magistrate that they recognized for review in *double* the amount of the *judgment*. This shows the intention of those persons; but the case does not show that the justice intended to enter a different amount in his record of the recognizance from what he did enter. He seems to have regarded the damages recovered as the basis of the measure of the recognizance. At any rate it does not *appear* that the error in the figures as inserted was a mere clerical error. There is always a presumption in favor of the correctness of proceedings in courts of justice in matters about which their records are not full and explicit; but here the record is full and explicit; and no room is left for presumption. It is urged by the plaintiffs that if this was shown to have been a mere cleri-

6

cal error, it would not aid the defendant. It is true that mistakes in docket entries in the County Court must stand and control until changed by the court on suggestion or motion at the term, or on formal proceedings for correction at a subsequent term ; and that court being perpetual in character, there is no obstacle to this revisory power. We are not called upon to say how this would be as to justices of the peace ; because it does not appear that the mistake here was a mere clerical error. The general idea is that the authority of a justice is temporary ; and his revisory power has always been understood to be terminated by the expiration of two hours after the rendition of his judgment. *Mosseaux* v. *Brigham*, 19 Vt. 461.

But the recognizance for review may be taken after the two hours and at any time before the justice issues execution, and to that time there is no limit to his right to continue to take it until he gets it correct ; but we think that after the execution has been issued and levied as in this case, the recognizance as shown by the record at the time the execution was issued, it not being shown that the amount specified was a clerical mistake on the part of the justice, must be regarded as the only recognizance for consideration. We express no opinion as to what the rule would be if such clerical mistake was shown.

We see no ground for reversal in respect to damages allowed by the County Court.

Judgment affirmed.